[No. C019075. Third Dist. Oct. 30, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN EARL CARTWRIGHT, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III., V. and VII.

COUNSEL

Wesley A. Van Winkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Wanda Hill Rouzan and Margaret Venturi, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**MORRISON, J.**—Effective March 7, 1994, the Legislature enacted the so-called "three strikes" law (Stats. 1994, ch. 12, §§ 1-2), as an urgency measure "to ensure longer prison sentences and greater punishment" for

felons who have previously committed violent or serious felonies.[1] (Pen. Code, § 667, subd. (b).) Defendant, a brutal felon, is the quintessential target of the three strikes law. He has a 30-year criminal history, including convictions for voluntary manslaughter, rape, burglary, and assault with a deadly weapon. His violent sexual assaults upon three women in March 1994 resulted in nineteen felony convictions with numerous weapon use enhancements. Under the three strikes law he was sentenced to 15 indeterminate terms of 25 years to life plus a determinate term of 53 years in prison.

Defendant appeals, challenging both the constitutionality and the application of the three strikes law. We reject all his contentions and affirm the judgment. In the published portion of this opinion, we first determine that an information was filed when the complaint was deemed an information. We uphold the three strikes law as valid urgency legislation and find it does not violate the prohibition against cruel and unusual punishment. Further, the same prior felony conviction may be used as a "strike" and as a five-year enhancement under Penal Code section 667, subdivision (a). Finally, the trial court properly sentenced defendant by selecting the greatest of the three alternatives under Penal Code section 667, subdivision (e)(2)(A) for each count of defendant's conviction. In the unpublished portion of this opinion, we reject defendant's contentions that the three strikes law is unconstitutionally vague, that convictions incurred before enactment of the three strikes law cannot be used as "strikes," and that the court erred in imposing a restitution fine without determining his ability to pay.

## BACKGROUND

Defendant's crime spree began on the afternoon of March 22, 1994, when he ordered Mary H., a prostitute, out of a van and into a house in Oak Park. Defendant hit her and told her to go into his room. There he hit her with a board and said he would kill her. He pulled out a switchblade knife and ordered her to take her clothes off. Defendant ran the blade up and down her body, telling her he would cut her if she screamed. He told her to get on her knees and orally copulate him. She started to comply when someone knocked on the door. When defendant left the room, Mary ran naked and screaming to her cousin's house nearby.

That evening Edith M., who was also known as Marlena, introduced defendant to Michelle T. Both women were prostitutes and they smoked rock

---

[1]The following November, the voters passed a three strikes initiative measure (Prop. 184) that is substantially similar to the three strikes law. (Compare Pen. Code, § 667, subds. (c)-(g) with Pen. Code, § 1170.12.) Since defendant's offenses occurred in March 1994, this case arises under Penal Code section 667, subdivisions (b) through (i).

cocaine with defendant. The next morning defendant drove up and ordered Michelle into the car. He had a gun and told her he would kill her if she did not tell him where Marlena was. In the car, defendant tapped the gun to Michelle's head and said they had better find Marlena or she would be dead. They found Marlena walking out of a store. Defendant ordered her into the car at gunpoint; he hit her very hard and threatened to kill her.

They went to a house on Stockton Boulevard and into a bedroom. Defendant had a rifle and two guns. He told both women to take their clothes off. He searched their clothes and took money from each. When Marlena forgot to take off her earrings, defendant hit her. Defendant left, leaving someone to watch them. When he returned he had the two women take off his clothes and he got on the bed. Smoking rock cocaine, he told them to orally copulate him. The two women then orally copulated defendant's penis and scrotum, switching positions four times at his order. He told them whoever did the best job might get easier punishment. Defendant then ordered Michelle on top of him and had intercourse with her. He ordered her to orally copulate him and then again had intercourse with her. Defendant ejaculated, smoked some more drugs, and then got dressed and left.

Defendant was originally charged with nine felony counts stemming from his attack on Michelle and Edith. An amended complaint added 10 felony counts, including those arising from his attack on Mary. Defendant was charged as follows: three counts of assault with a deadly weapon (one assault upon each of the three women) (Pen. Code, § 245, subd. (a)(1); all further unspecified statutory references are to the Penal Code) (counts 1, 6 and 8); assault with intent to commit oral copulation upon Mary (§ 220), with a knife use enhancement (§ 12022, subd. (b)) (count 2); two counts of being a felon in possession of a firearm (§ 12021, subd. (a)) (counts 3 and 4); two counts of kidnapping with intent to commit rape (§ 208, subd. (d)), with firearm use enhancements (§ 12022.5, subd. (a) (counts 5 and 7); two counts of robbery (§ 211), with a firearm use enhancement on one count (§ 12022.5, subd. (a)) (counts 9 and 10); seven counts of forced oral copulation (§ 288a, subd. (c)), with firearm use enhancements (§ 12022.3, subd. (a)) (counts 11 through 16 and 18); and two counts of rape (§ 261, subd. (a)(2)), with firearm use enhancements (§ 12022.3, subd. (a)) (counts 17 and 19). It was further alleged defendant had three prior serious felony convictions (§ 667, subd. (a)) and had served two prior prison terms (§ 667.5, subd. (b)). And it was alleged defendant came within the three strikes law.

The jury returned a verdict of guilty on all counts and found the weapon use allegations true. In a bifurcated proceeding, the court struck the first

prior conviction allegation on the People's motion and found the other prior conviction allegations and both prison term allegations true. Defendant was sentenced to an indeterminate term of 375 years to life and a determinate term of 53 years.

DISCUSSION

## I. *Filing of Information*

■ The offenses with which defendant was charged must be prosecuted by an indictment or information. (§ 682.) "An information is a written accusation of crime made by a district attorney, without action by a grand jury, after a magistrate, at a preliminary hearing, has found sufficient cause to believe the defendant guilty of a public offense and has ordered him committed." (*Greenberg* v. *Superior Court* (1942) 19 Cal.2d 319, 321 [121 P.2d 713].) At the conclusion of the preliminary hearing on May 6, 1994, after the magistrate ordered defendant held to answer on all charges, the magistrate, in her capacity as cross-designated judge of the Sacramento Municipal and Superior Courts, deemed the amended complaint, which had been filed April 19, 1994, to be an information. This document was file-stamped again on June 28, 1994, with the notation "nunc pro tunc 5-6-94."

Defendant objects that an information was never actually filed, and claims the trial court lacked jurisdiction to try him. The precise nature of defendant's objection is difficult to discern. He does not claim the document filed was insufficient as an information, nor does he challenge the cross-designation of the judge under the consolidation of Sacramento's municipal and superior courts. Instead, he appears to challenge the ability of the cross-designated judge to deem the amended complaint an information. In so doing, he relies upon *People* v. *Smith* (1986) 187 Cal.App.3d 1222 [232 Cal.Rptr. 619]. No information was filed in *Smith*, only a complaint. At the arraignment in superior court, the parties apparently treated the complaint as an information and the court accepted defendant's guilty plea. The reviewing court held the failure to file an information was an irregularity that could not be cured by consent. (*Id.* at pp. 1224-1225.)

This case is distinguishable. Here, the magistrate, acting as a superior court judge, accepted the document on file as an information. At that point the information was filed. Unlike *People* v. *Smith, supra,* 187 Cal.App.3d 1222, this is not a case where the parties consented in an after-the-fact attempt to cure the failure to file the proper document.

Defendant next challenges the nunc pro tunc filing of the information. An information must be filed within 15 days after the commitment.[2] (§ 739.) Defendant contends the failure to file the information within 15 days of May 6 cannot be cured by the notation "nunc pro tunc" because the filing simply did not take place. We disagree. The judge accepted the document as an information at the preliminary hearing, the minute order for that day indicates the amended complaint was deemed an information, and the document was on file. The only missing step was the clerical act of file-stamping the document. This clerical error may be corrected by a nunc pro tunc order. (See 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 65, p. 499.)

## II. *Urgency Legislation*

As noted above, the three strikes law was enacted as an urgency statute "to protect the public from the imminent threat posed by those repeat offenders." (Stats. 1994, ch. 12, § 2.) Under the California Constitution, an urgency statute becomes effective immediately upon enactment. (Cal. Const., art. IV, § 8, subd. (c)(3).) Defendant contends the three strikes law could not be enacted as an urgency measure because it changes the duties of both judges and prosecutors.

"An urgency statute may not create or abolish any office or change the salary, term, or duties of any office, . . ." (Cal. Const., art. IV, § 8, subd. (d).) Defendant contends the three strikes law changes the duties of judges by substantially restricting their discretion in sentencing. He contends the prosecutor's duties are likewise changed by the prohibition against plea bargaining and the requirement to plead and prove all qualifying prior convictions.

Defendant's contention is unavailing. In interpreting what is a "change of duties" within the meaning of the constitutional limitation on urgency legislation, the California Supreme Court explained, "[a]n addition or subtraction in relation to the volume of the duties required to be performed by an officer, which does not substantially affect the primary duties of his office, is not such a change of duties as would prevent immediate effectiveness of legislation properly declared to be urgent." (*Martin* v. *Riley* (1942) 20 Cal.2d 28, 37 [123 P.2d 488].)

The primary duties of the office of trial judge and prosecutor have not been changed by the three strikes law. Their discretion in sentencing or

---

[2]"The information shall be in the name of the people of the State of California and subscribed by the district attorney." (§ 739.) The amended complaint, which was deemed the information, met these two requirements.

prosecuting defendants has never been absolute. (See, e.g., §§ 969 [requiring that all previous convictions be charged]; 1192.7 [limitation on plea bargaining]; 1203.06 [no probation for certain offenses]; 1385, subd. (b) [restriction on court's power to strike prior conviction for serious felony].) Since the new restrictions in the three strikes law are not unduly or materially and substantially different from those already imposed, they do not constitute a "change" in duties. (*Davis* v. *County of Los Angeles* (1938) 12 Cal.2d 412, 424 [84 P.2d 1034].)

Defendant relies upon *Stockburger* v. *Jordan* (1938) 10 Cal.2d 636 [76 P.2d 674], in which the Supreme Court found an act granting the director of finance the authority to lease public lands for the production of oil and gas changed the duties of the office. The court interpreted "change" as " 'to alter; to make different.' " (*Id.* at p. 648.) The court, however, later made clear that "change" is not to be interpreted as broadly as that definition suggests. "[I]t was not intended that it should be inferred therefrom that every addition to the duties devolving upon public officers should be deemed to constitute a 'change' of duties. . . . The new and special character of the additional duties imposed upon the director of finance under the act involved in [*Stockburger*] was entirely foreign to the duties theretofore devolving upon him by law." (*Davis* v. *County of Los Angeles*, *supra*, 12 Cal.2d at p. 424.) The change in the duties of judges and prosecutors under the three strikes law is neither "new and special" nor "entirely foreign" to their existing duties. Accordingly, the three strikes law is valid urgency legislation.

### III. *Vagueness**

. . . . . . . . . . . . . . . . . . . . . . . . .

### IV. *Cruel and Unusual Punishment*

 Defendant contends the three strikes law is inherently cruel and unusual and his sentence is so disproportionate to his crime as to violate both the Eighth Amendment of the federal Constitution and article I, section 17 of the California Constitution. This contention has no merit.

In arguing there is a violation of the Eighth Amendment proscription against "cruel and unusual punishments," defendant relies upon *Solem* v. *Helm* (1983) 463 U.S. 277 [77 L.Ed.2d 637, 103 S.Ct. 3001], in which the court found a life sentence without the possibility of parole for a seventh nonviolent felony was unconstitutional. In *Solem*, a bare majority of the court held ". . . a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the

---

*See footnote, *ante*, page 1123.

offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." (*Id.* at p. 292 [77 L.Ed.2d at p. 650].)

Defendant's reliance on *Solem* is weakened by *Harmelin v. Michigan* (1991) 501 U.S. 957 [115 L.Ed.2d 836, 111 S.Ct. 2680], in which a life sentence without possibility of parole for possessing 672 grams of cocaine was upheld. The case produced five separate opinions. While seven justices supported a proportionality review under the Eighth Amendment, only four favored application of all three factors cited in *Solem.* As one court has concluded, "disproportionality survives; *Solem* does not." (*McGruder v. Puckett* (5th Cir. 1992) 954 F.2d 313, 316.)

In *Harmelin*, Justice Scalia, joined by Chief Justice Rehnquist, determined *Solem* was wrongly decided and the Eighth Amendment contained no proportionality guarantee. (*Harmelin v. Michigan, supra*, 501 U.S. 957, 965 [115 L.Ed.2d 836, 846].) Justice Kennedy, joined by Justices O'Connor and Souter, found the Eighth Amendment encompassed "a narrow proportionality principle." (*Id.* at p. 997 [115 L.Ed.2d at p. 866].) ■ "[T]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." (*Id.* at p. 1001 [115 L.Ed.2d at p. 869].) ■ Consideration of the first factor identified in *Solem v. Helm, supra*, 463 U.S. 277 [77 L.Ed.2d 637] was sufficient to uphold the constitutionality of defendant's sentence; intra- and interjurisdictional analyses are appropriate only in rare cases. (*Harmelin v. Michigan, supra*, at pp. 1004-1005 [115 L.Ed.2d at p. 871].) The defendant in *Harmelin* was sentenced to spend the rest of his life in prison for possessing a large quantity of drugs. Defendant here, a violent recidivist with 19 current felony convictions with weapon use enhancements, received essentially the same sentence. The sentence is not "grossly disproportionate" to defendant's more serious crimes.

Moreover, in *Solem v. Helm, supra*, 463 U.S. 277, 296 [77 L.Ed.2d 637, 653] the court focused on the nonviolent nature of both the defendant's current offense of uttering a " 'no account' " check (" 'one of the most passive felonies a person could commit' ") and his prior offenses. The majority acknowledged a life sentence for fourth time heroin dealers and other violent criminals would pass constitutional muster. (*Id.* at p. 299 and fn. 26 [77 L.Ed.2d 637, 655].) Therefore, even under *Solem*, defendant's sentence does not violate the Eighth Amendment.

■ The California Constitution prohibits "cruel *or* unusual punishment." (Cal. Const., art. I, § 17, italics added.) We construe this provision

separately from its counterpart in the federal Constitution. (*Raven* v. *Deukmejian* (1990) 52 Cal.3d 336, 355 [276 Cal.Rptr. 326, 801 P.2d 1077].)

A punishment may violate the California Constitution although not "cruel or unusual" in its method, if "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921], fn. omitted.) The *Lynch* court identified three techniques courts used to administer this rule. First, they examined the nature of the offense and the offender. (*Id.* at p. 425.) Second, they compared the punishment with the penalty for more serious crimes in the same jurisdiction. (*Id.* at p. 426.) Third, they compared the punishment to the penalty for the same offense in different jurisdictions. (*Id.* at p. 427.)

 Defendant relies only on the first two techniques. He urges his crimes, although 19 in number, arose from only 2 incidents and left no permanent physical injury. Second, he contends murderers, even serial killers, are treated more leniently because they will be eligible for parole. Neither point has merit.

Defendant grossly understates the seriousness of his brutal and degrading acts. "The essential guilt of rape consists in the outrage to the person and feelings of the victim of the rape." (§ 263.) Further, defendant ignores an examination of the nature of the offender. "This branch of the inquiry therefore focuses on the particular person before the court, and asks whether the punishment is grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind." (*People* v. *Dillon* (1983) 34 Cal.3d 441, 479 [194 Cal.Rptr. 390, 668 P.2d 697].) Defendant was 44 years old when he committed these crimes; he had a criminal history dating back to when he was 14. Defendant had spent most of his adult life in custody; he was on parole, having been released from custody only 3 days earlier, when he committed these offenses. Defendant's prior crimes were numerous and often violent; they included weapons charges, assault with a deadly weapon, burglaries, voluntary manslaughter, and rape. The legislative determination that, given defendant's repeated failure to reform and his continued violence, the public should now be protected forever from this violent recidivist can hardly be said to " 'shock the conscience.' " (*In re Lynch, supra,* 8 Cal.3d at p. 424.)

Defendant's comparison of his punishment to that of a murderer is misguided. He ignores that the three strikes law punishes not only his current offenses, but also his recidivism. California statutes imposing more severe

punishment on habitual criminals have long withstood constitutional challenge. (See *People* v. *Weaver* (1984) 161 Cal.App.3d 119, 125-126 [207 Cal.Rptr. 419], and cases cited therein.) Moreover, the serial murderer of defendant's example would likely receive either the death penalty or life without parole. (§ 190.2, subd. (a)(3).) Thus, defendant's argument about parole eligibility does not hold.

## V. *Use of Pre-March 7, 1994, Prior Convictions**

. . . . . . . . . . . . . . . . . . . . . . . . .

## VI. *Dual Use of Prior as "Strike" and Enhancement*

■ Defendant contends the trial court erred in using the same two prior serious felony convictions both as qualifying priors or "strikes" to bring him under the three strikes law and to impose five-year enhancements under section 667, subdivision (a). He contends such dual use is prohibited both by subdivision (a)(2) of section 667 and by section 654.

Subdivision (a)(1) of section 667 provides a five-year enhancement for a prior conviction of a serious felony when the current conviction is a serious felony. Subdivision (a)(2) provides in part: "This subdivision shall not be applied when the punishment imposed under other provisions of law would result in a longer term of imprisonment." Defendant argues since his sentence under the three strikes law results in a longer term of imprisonment, the enhancement of subdivision (a) does not apply.

■ A defendant with one or two qualifying violent or serious prior felony convictions must be sentenced under subdivision (e) of section 667. (§ 667, subd. (f)(1).) That sentencing is "in addition to any other enhancement or punishment provisions which may apply." (§ 667, subd. (e).) We read this language to evince the legislative intent that section 667, subdivision (a) enhancements apply to defendants sentenced under the three strikes law. This result is consistent with the expressed legislative intent "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses." (§ 667, subd. (b).)

■ Defendant's reasoning that the five-year enhancements cannot apply fails because the "other provisions of law" at issue here—the three strikes law—includes enhancements in calculating the term imposed. The language of section 667, subdivision (e) is in marked contrast to that of

---

*See footnote, *ante*, page 1123.

section 667.7, which provides a life sentence for certain recidivists convicted of a felony in which they inflicted great bodily injury. Section 667.7 makes no mention of adding enhancements to the sentence determined under its provisions. Accordingly, section 667, subdivision (a)(2) has been held to prohibit a five-year serious felony enhancement when a defendant is sentenced under section 667.7. (*People* v. *Skeirik* (1991) 229 Cal.App.3d 444, 468 [280 Cal.Rptr. 175].)

Defendant's reading of section 667 results in confusion and absurdity. For example, take the case of a defendant convicted of residential burglary, who had one prior serious felony conviction, and who received the midterm of four years (§ 461). Without application of the three strikes law, his sentence would be nine years, the four-year midterm plus a five-year enhancement. Calculating his sentence under three strikes without the enhancement would result in an eight-year term, double the midterm. Since this is a shorter term of imprisonment, under defendant's reasoning the five-year enhancement can apply. If it applies in lieu of the three strikes provisions, then the defendant receives the same nine-year sentence as before and the express intent to provide longer sentences under three strikes has been thwarted.

If instead, the mandate of section 667, subdivision (f)(1) is followed and the four-year term is first doubled and then the enhancement added, the result is an anomaly under defendant's reading. Five-year serious felony enhancements would be applied only where the current felony conviction results in a term of five years or less. In short, only the less serious of the serious felonies will be enhanced.

■ Either scenario runs counter to two well-established canons of statutory interpretation. First, we must ascertain the intent of the Legislature to effectuate the purpose of the law (*DuBois* v. *Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387 [20 Cal.Rptr.2d 523, 853 P.2d 978]), and the Legislature clearly intended longer prison sentences for all defendants sentenced under the three strikes law. Second, we must adopt an interpretation that avoids an absurd result the Legislature did not intend. (*Bruce* v. *Gregory* (1967) 65 Cal.2d 666, 673 [56 Cal.Rptr. 265, 423 P.2d 193].)

We recognize that the language "any other enhancement or punishment provisions that may apply" is a less than precise directive to apply section 667, subdivision (a) enhancements. ■ "Although desirable, clarity, coherence, and eloquence are not conditions precedent to legislative vitality." (*People* v. *Powell* (1991) 230 Cal.App.3d 438, 441 [281Cal.Rptr. 568].)
■ We conclude the Legislature intended a defendant's sentence under the three strikes law should include a doubled term or life term, as appropriate under section 667, subdivision (e), plus an enhancement under section

667, subdivision (a) for each prior serious felony conviction. (Accord, *People* v. *Ramirez* (1995) 33 Cal.App.4th 559, 562-569 [39 Cal.Rptr.2d 374].)

 Defendant's contention that section 654 precludes using the same prior conviction both as a "strike" and as an enhancement is unavailing. Section 654 prohibits double punishment for the same act or omission. Here, the prior conviction establishes defendant's status as a recidivist; it is not an "act," so section 654 does not apply. (*People* v. *Price* (1992) 4 Cal.App.4th 1272, 1277 [6 Cal.Rptr.2d 263].) Further, the Legislature may create exceptions to the statutory prohibition of section 654. (See *People* v. *Hicks* (1993) 6 Cal.4th 784, 792-793 [25 Cal.Rptr.2d 469, 863 P.2d 714] [§ 667.6, subd. (c)]; *People* v. *Powell, supra,* 230 Cal.App.3d 438, 441-442 [Health & Saf. Code, § 11370.2].) Here, the Legislature has created an express exception. (*People* v. *Ramirez, supra,* 33 Cal.App.4th 559, 573.)

## VII. *Restitution Fine*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## VIII. *Calculation of Defendant's Sentence*

Prior to sentencing, the People submitted a sentencing statement. The statement noted a number of aggravating factors and no mitigating factors. It stated that while it was "arguable" that consecutive sentencing was not required under three strikes, it was appropriate in this case. The statement concluded that defendant should be sentenced under the provisions of section 667, subdivision (e)(2)(A)(ii), for a life term with a minimum term of 400 years, plus a determinate term of 53 years.

The trial court accepted most of the People's recommendations. It denied probation and noted five factors in aggravation and found none in mitigation. It found execution of sentence on count 1 (the assault upon Mary), count 4 (the second firearm possession), and counts 5 and 7 (the two kidnapping counts) should be stayed pursuant to section 654. On the issue of whether the sentences on the remaining counts should be consecutive or concurrent, the court noted pursuant to rule 425(a)(2) of the California Rules of Court that "these various crimes involved separate and distinct acts of violence and threats of violence." It further noted the lack of any mitigating factors argued in favor of consecutive sentences and that consecutive sentences might be required under section 667.6, subdivision (d) to the extent the violent sex crimes involved different victims.

*See footnote, *ante,* page 1123.

The court then calculated the sentence as to each count, determining that for each of the 15 unstayed counts the greatest minimum term for the life sentence under section 667, subdivision (e)(2)(A) was 25 years. The court then imposed the midterm of 4 years on each of the firearm use enhancements on the 10 unstayed counts, 1 year on the knife use enhancement on count 2, and a total of 12 years for the prior prison terms and serious felony convictions, for a total determinate term of 53 years.

In a petition for rehearing, for the first time, defendant challenges the calculation of his sentence. He contends consecutive sentences were not mandatory and argues the court erroneously calculated his sentence by applying the options of section 667, subdivision (e)(2)(A) to each count separately rather than to his entire sentence as a whole. ▮ Since an error of law in calculating a sentence may be corrected at any time (*People v. Jack* (1989) 213 Cal.App.3d 913, 916 [261 Cal.Rptr. 860]), we granted rehearing and requested additional briefing from both parties as to whether defendant's sentence was calculated properly. Both parties contend the trial court erred. Predictably, they disagree as to how; defendant contends his sentence is too long, while the Attorney General argues it should be longer. We find no error.

### A. *Consecutive Sentences*

▮ Subdivision (c)(6) of section 667 provides: "If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to subdivision (e)."

Defendant argues this subdivision does not require consecutive sentences in this case because all his offenses were committed on only two occasions. In his petition for rehearing, defendant concedes consecutive sentences were "permissible in the discretion of the trial judge." In his supplemental brief, however, defendant backs away from this concession and argues the court erred in imposing consecutive sentences. Noting that section 667, subdivision (c)(6) requires consecutive sentences in certain cases, defendant argues: "By implication, it seems equally clear that the Legislature intended that consecutive sentences should *not* be imposed if the offenses in question were committed on the same occasion or arose from the same set of operative facts."

We disagree. ▮ That the Legislature intended consecutive sentences to be mandatory in certain situations in no way indicates it meant for those

situations to be the only ones where consecutive sentences were permissible. The clear intent behind the three strikes law is "to ensure longer prison sentences and greater punishment" for recidivist violent felons such as defendant. (§ 667, subd. (b).) Reading into the statute by implication a restriction on consecutive sentences that did not exist before runs counter to this clear intent and is, therefore, untenable. ■■■■ We agree with defendant's position in his petition for rehearing; the trial court had discretion to impose consecutive sentences.

In his petition for rehearing defendant urges the matter must be remanded for resentencing on the issue of consecutive sentences. This assertion must rest on the unstated premise that the trial court misunderstood the scope of its discretion in this matter. Defendant offers no evidentiary support for this premise and the record indicates otherwise. First, we presume the court properly performed its duty. (Evid. Code, § 664.) Second, the People's sentencing statement suggested consecutive sentences might not be required, but argued they were appropriate. Third, the trial court took care to state reasons for its choice of consecutive sentences. Nothing indicates the court misunderstood the discretionary choices before it. Defendant does not challenge the reasons the court gave for consecutive sentences and does not otherwise show they were improper. We find the court properly imposed consecutive sentences and no remand is required.

### B. *Application of Section 667, subdivision (e)(2)(A)*

■■■■ Subdivision (e)(2)(A) of section 667 provides: "If a defendant has two or more prior felony convictions as defined in subdivision (d) that have been pled and proved, the term for the current felony conviction shall be an indeterminate term of life imprisonment with a minimum term of the indeterminate sentence calculated as the greater of:

"(i) Three times the term otherwise provided as punishment for each current felony conviction subsequent to the two or more prior felony convictions.

"(ii) Imprisonment in the state prison for 25 years.

"(iii) The term determined by the court pursuant to Section 1170 for the underlying conviction, including any enhancement applicable under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2, or any period prescribed by Section 190 or 3046."

Relying on *People* v. *Jenkins* (1995) 10 Cal.4th 234 [40 Cal.Rptr.2d 903, 893 P.2d 1224], defendant contends the trial court was required to calculate

defendant's entire sentence on all counts under each of the three alternatives, rather than calculating the sentence on each count separately. Since the court used alternative (ii), 25 years, for each unstayed count, defendant's reading would result in a significantly shorter total sentence.

In *People* v. *Jenkins*, *supra*, 10 Cal.4th 234, the high court construed section 667.7, a similar habitual criminal statute. In relevant part section 667.7 provides: "Any person convicted of a felony in which the person inflicted great bodily injury as provided in Section 12022.7, or personally used force which was likely to produce great bodily injury, who has served two or more separate prison terms [for certain enumerated offenses] is a habitual offender and shall be punished as follows: [¶] (1) A person who served two prior separate prison terms shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 20 years, or the term determined by the court pursuant to Section 1170 for the underlying conviction, including any enhancement applicable under Chapter 4.5 (commencing with section 1170) of Title 7 of Part 2, or any period prescribed by Section 190 or 3046, whichever is greatest."

The *Jenkins* court held enhancements should be included in calculating a defendant's sentence under the third alternative (the period prescribed by section 190 or 3046) as well as under the second (the term determined under section 1170). (*People* v. *Jenkins*, *supra*, 10 Cal.4th at p. 254.) The court interpreted the language of the second alternative under section 667.7, which is identical in wording to alternative (iii) under section 667. "The language of the second alternative—referring to persons who otherwise would be sentenced under the determinate sentencing provisions of section 1170 et seq.—makes clear that the Legislature intended that the minimum sentence under section 667.7 be calculated with reference to the entire sentence (including any applicable enhancements) that a defendant would face if he or she were not being sentenced under section 667.7, so as to ensure that a defendant who qualifies for habitual offender sentencing does not receive treatment more lenient than that accorded a nonhabitual offender who commits the same offense." (10 Cal.4th at p. 250.)

Defendant reads "calculated with reference to the entire sentence" to mean that a defendant's sentence is calculated as to all counts. He argues since the same language is used in the three strikes law, it should be interpreted the same. We agree the two habitual criminal statutes are in pari materia and therefore the interpretation of a phrase in one controls the interpretation of the identical language in the other. (*In re Phyle* (1947) 30 Cal.2d 838, 845 [186 P.2d 134].) Our quarrel is with his interpretation of "entire sentence"; his reading is not supported by *People* v. *Jenkins*, *supra*, 10 Cal.4th 234.

The high court held a defendant who commits a number of serious felonies which qualify for life sentences under section 667.7, may receive a separate, consecutive life sentence for each such felony. (*People* v. *Jenkins*, *supra*, 10 Cal.4th at pp. 254-256.) Thus, we must read "entire sentence" to mean the entire sentence as to a particular count, not as to all counts. *Jenkins* supports the Attorney General's position that the alternatives for the minimum sentence in subdivision (e)(2)(A) are calculated separately as to each count.

This conclusion is reinforced by the provisions of section 667, subdivision (c)(6), which directs the court, in certain situations, to "sentence the defendant consecutively on each count pursuant to subdivision (e)." (§ 667, subd. (c)(6).) In determining whether a subordinate term should be doubled for a "second strike" defendant, the court in *People* v. *Anderson* (1995) 35 Cal.App.4th 587 [41 Cal.Rptr.2d 474], looked to this provision. It found: "The statute clearly mandates that each count of a multiple count conviction will be sentenced independently under subdivision (e)." (*Id.* at p. 602.) Thus, defendant's argument that the doubling and tripling provisions of "three strikes" must be applied to all counts together is not persuasive.

Finally, defendant argues that if the alternatives of section 667, subdivision (e)(2)(A) are applied on a count by count basis, alternatives (i) and (iii) will almost never apply and thus they are mere surplusage. Defendant is wrong. Alternative (i) will apply where the "term otherwise provided as punishment" exceeds eight years. This includes such offenses as murder (§ 190), the middle or upper term for continuous child molestation (§ 288.5), and the upper term for manslaughter (§ 193, subd. (a)), certain forms of kidnapping (§ 208, subds. (b) & (d)), and carjacking (§ 215, subd. (b)). Alternative (iii) will apply where the defendant has numerous enhancements. While such cases may not be common, it is the experience of this court that they are not as rare as defendant suggests.

The Attorney General contends the trial court erred in calculating defendant's sentence in three respects. First, he questions the stay of execution of the two kidnapping counts since the sentence for kidnapping with the intent to commit a sexual offense is greater than the sentence for an individual sexual offense. This argument ignores the fact that there were several sex offenses, so the total sentence on the sex offenses exceeded that for kidnapping and the stay was proper. (See *People* v. *Latimer* (1993) 5 Cal.4th 1203 [23 Cal.Rptr.2d 144, 858 P.2d 611] [proper to stay kidnapping count where two rape counts].)

Second, the Attorney General questions the calculation of the sentence on these two stayed counts. While the court stated it was applying alternative

(iii), it is clear the court misspoke. It tripled the upper term of 11 years under alternative (i) and then added the 4-year gun use enhancement. This calculation was proper.

Lastly, the Attorney General computes the sentences for the sex offenses using a 10-year enhancement for the firearm use. Section 12022.3 now provides for an enhancement of three, four, or ten years for use of a firearm or deadly weapon in the commission of certain sex offenses. Previously, the term of the enhancement was three, four, or five years. (Stats. 1993, ch. 299, § 2.) The increase in the length of the enhancement was enacted in the first extraordinary session in the fall of 1994. (Stats. 1994, First Ex. Sess. 1993-1994, ch. 31, § 2, ch. 33, § 5.) It was not in effect when defendant committed his offenses in March 1994. The trial court properly used the previous lesser enhancement.

The trial court was faced with sentencing defendant on 19 counts, with multiple enhancements, under a new sentencing scheme prior to resolution of the many questions such scheme presents. We have found no error in the court's sentencing and commend it on a fine job.

### DISPOSITION

The judgment is affirmed.

Puglia, P. J., and Sims, J., concurred.

The petition of both respondent and appellant for review by the Supreme Court was denied February 15, 1996. Mosk, J., was of the opinion that the petition should be granted.