[No. H031795. Sixth Dist. Sept. 10, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANCISCO DOMINGUEZ, Defendant and Appellant.

[No. H032996. Sixth Dist. Sept. 10, 2008.]

In re FRANCISCO DOMINGUEZ on Habeas Corpus.

COUNSEL

Patricia S. Lai, under appointment by the Court of Appeal, for Defendant and Appellant Francisco Dominguez.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Michael E. Banister, Deputy Attorneys General, for Plaintiff and Respondent The People.

OPINION

**PREMO, Acting P. J.**—A jury found defendant Francisco Dominguez guilty of one count of theft or unauthorized use of a vehicle. (Veh. Code, § 10851, subd. (a).) He was sentenced to four years in prison. Defendant raises two arguments on appeal. First, defendant maintains that the trial court lacked jurisdiction because the parties had agreed that the complaint could serve as the information rather than requiring the prosecutor to file a separate information after the preliminary hearing. We reject this argument. Defendant also argues that he was deprived of due process of law when the trial court granted the prosecutor's motion to amend the information and instructed the jury that it could find defendent guilty of an offense not shown by the evidence at the preliminary hearing. The Attorney General concedes the instructional error but argues that it was harmless. Defendant maintains that the error is reversible per se. Accepting the Attorney General's concession, we conclude that even if such an error could be harmless, it is reversible in this case.[1]

I. STATEMENT OF THE CASE

A complaint charged defendant with one count of theft or unauthorized use of a vehicle on or about and between October 16, 2006, and October 18, 2006. According to the evidence presented at the preliminary hearing, one day in September or October 2006, victim Hector Zavala left the key to his 1987 Toyota Celica with defendant so that defendant could repair the car while Zavala was at work. Defendant returned the key to Zavala later the same evening. Several days later, on or about October 16, 2006, Zavala woke

---

[1] By way of both appeal and petition for writ of habeas corpus, defendant claims his trial counsel provided ineffective assistance for failing to object to the introduction of certain evidence. (Case No. H032996.) We have previously ordered the writ petition considered with the appeal. In light of our conclusion that the judgment must be reversed, we need not reach this or the other issues defendant raises on appeal. Accordingly, we shall deny the petition for habeas corpus.

up to find the car missing from its parking spot. A few days after that, Zavala saw defendant driving the car around the neighborhood. Defendant was arrested and the undamaged car was recovered shortly thereafter.

Immediately following the preliminary hearing, the magistrate asked defendant's attorney if he would "stipulate that the complaint may be deemed an information." Counsel agreed and the magistrate accepted the stipulation. The complaint was restamped with the date of the preliminary hearing—November 27, 2006—and the word "Information" was printed above the file stamp. Prior to trial, the parties stipulated to amending the information to allege that the crime took place between October 16, 2006, and October 19, 2006. Thus, when the trial began, defendant was being prosecuted for one count of vehicle theft or unauthorized use that had allegedly taken place sometime between October 16 and 19, 2006.

At trial, Zavala testified in more detail about what had happened on the day defendant was supposed to have been working on the car. On that day, October 9, 2006, defendant had taken the car, without Zavala's permission, and did not return it until later in the evening. At the close of the evidence, the prosecutor moved to amend the information to extend the alleged date range to October 9 through 19, 2006, allowing the jury to convict defendant based upon two alternate factual scenarios. The trial court granted the motion over a defense objection that evidence of the October 9, 2006 incident had not been introduced at the preliminary hearing. The court also gave the jury a unanimity instruction, insuring that the jury would have to agree upon which incident constituted the crime.

After approximately one hour of deliberations the jury returned a verdict of guilty. The jury also found two allegations of aggravating circumstances to be true, namely that the manner in which the crime was carried out showed "planning, sophistication, or professionalism" and that defendant "took advantage of a position of trust or confidence to commit the offense." (Cal. Rules of Court, rule 4.421(a)(8), (11).) Defendant admitted one prior strike conviction. (Pen. Code, §§ 667, subds. (b)–(i), 1170.12.) The trial court denied defendant's *Romero*[2] motion to strike the strike and sentenced defendant to four years in prison.

## II. Facts

### A. *The Prosecution's Case*

Zavala testified at trial that, on the weekend of October 7 and 8, 2006, defendant had come to Zavala's apartment building to work on Zavala's car

---

[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 529–530 [53 Cal.Rptr.2d 789, 917 P.2d 628].

in the parking lot. Defendant repaired the fuel pump and the starter. Zavala watched him work, making sure the work was "done right." The car also had an air conditioning problem so Zavala engaged defendant to repair that as well, giving him $100 in advance for the work.

Defendant arrived at Zavala's apartment building early on Monday morning, October 9, 2006, to do the air conditioning repair. Since Zavala had to go to work he left his only key to the car with defendant. When Zavala returned that afternoon, both defendant and the car had disappeared. Defendant returned the car and the key later that night, around 9:00 or 10:00 p.m., explaining that he had taken the car to visit his family. He had not repaired the air conditioning. Zavala had not given defendant permission to take the car to visit his family. He had expected defendant to work on the car at the parking spot.

On Saturday, October 14, 2006, Zavala had another mechanic fix the air conditioning. The next day, defendant arrived and asked about the air conditioning repairs and Zavala told him that someone else had already done the work. Zavala parked the car that night at around 11:00 p.m. in its regular parking spot. When Zavala awoke the next morning, October 16, 2006, the car was gone. Zavala immediately reported the theft to the police. Zavala did not name a suspect. Zavala lived with five other adults in his two-bedroom apartment but they were not suspects because none of them could drive. Zavala also had only one key to the car; he had never had it duplicated.

Over the next few days, Zavala walked around the neighborhood looking for his car. On October 19, 2006, he saw defendant driving it and watched him park the car by an apartment building on Ninth Street. Zavala approached defendant and accused him of stealing the car and told him he was going to call the police. Defendant denied that the car was Zavala's but Zavala recognized the car and the license plate. Defendant went up toward apartment 10 in the nearby apartment building. Zavala had his car key with him but since he had reported the car as stolen he did not want to drive it until he followed up with the police. There were two parking enforcement officers nearby but not within view of the car. Zavala went to those officers and reported what he had just seen. Eventually, officers from the San Jose Police Department responded, but when they arrived at the spot where Zavala had last seen the car, it was gone.

Later that evening Zavala saw defendant on foot. He again called police, who arrived and arrested defendant. The car was not in the area. Zavala found the car on October 25, 2006, parked on Seventh Street behind a brown Nissan truck. It was the same truck Zavala had previously seen defendant driving. Again, Zavala had his key but did not immediately take possession of the car.

He called the police instead. The car was undamaged other than a cracked tail light and there was no evidence of tampering with the ignition. The car had a lock on the steering column, which Zavala had to cut off in order to drive the car.

## B. *The Defense Case*

The defense case focused solely upon discrediting Zavala. Counsel pointed to discrepancies between his pretrial statements and his testimony at trial and also questioned Zavala's failure to take possession of the car when he first saw it on October 19, 2006, or when he found it again on October 25, 2006. Defendant did not testify.

## III. ISSUES

1. Was the stipulation to deem the complaint to be the information an impermissible attempt to confer jurisdiction upon the superior court?

2. Was it reversible error to allow the jury to base its guilty verdict upon the October 9, 2006 incident, which had not been disclosed at the preliminary hearing?

## IV. DISCUSSION

### A. *Deeming the Complaint to Be the Information*

Defendant contends that the superior court lacked jurisdiction to try him because no information was ever filed. According to defendant, the stipulation that the complaint could be deemed the information is the same thing as stipulating to jurisdiction, which is not permitted. The Attorney General maintains that the stipulation was not a stipulation to jurisdiction but a stipulation that the complaint could actually become the information, the filing of which confers jurisdiction upon the superior court. The Attorney General is correct.

An information is an accusatory pleading made after a preliminary hearing in which it is found that there is sufficient cause to believe the defendant is guilty of a public offense. (*People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1132 [46 Cal.Rptr.2d 351].) The principal purpose of the information is to notify the accused of the charges he or she is to meet at trial. (*People v. Adams* (1974) 43 Cal.App.3d 697, 705 [117 Cal.Rptr. 905].) In order to provide that notice, the Penal Code requires a defendant to be arraigned in the court in which the information is filed. (Pen. Code, § 976, subd. (a).) At arraignment, the court reads the information to the defendant

and asks whether he or she pleads guilty or not guilty to the charges as set forth in it. (*Id.*, § 988.) Failure to file an information is an irregularity of sufficient importance that the parties cannot cure the irregularity by their consent to the proceedings. (*People v. Smith* (1986) 187 Cal.App.3d 1222, 1224–1225 [232 Cal.Rptr. 619] (*Smith*).)

Prior to the unification of the trial courts, felony proceedings commenced in the municipal court with the filing of a complaint and the holding of a preliminary examination before the magistrate. (Pen. Code, §§ 806, 872.) If the magistrate concluded there was sufficient evidence to hold the defendant to answer, the prosecution filed an information in the superior court within 15 days, charging the defendant with the felony offense. (*Id.*, §§ 976, 1382, subd. (a)(1); *People v. Crayton* (2002) 28 Cal.4th 346, 360 [121 Cal.Rptr.2d 580, 48 P.3d 1136].) After court unification, "the proceedings in the early stages of a felony prosecution that formerly were held in municipal court now are held in superior court, but the basic procedural steps—the filing of a complaint before a magistrate, the holding of a preliminary examination before a magistrate, and the filing of an information and arraignment on the information before a superior court judge—remain the same." (*People v. Crayton, supra*, at pp. 359–360.)

In *Smith*, the case upon which defendant relies, a complaint had been filed in municipal court but, at arraignment in superior court, it was discovered that there was no accusatory pleading on file in that court. The matter proceeded as if the complaint were the information. (*Smith, supra*, 187 Cal.App.3d at p. 1224.) The appellate court reversed, holding that without an information on file before it, the superior court had no jurisdiction to proceed. (*Id.* at p. 1225.)

There was a different result in *Cartwright*, which took place after the unification of the trial courts. In *Cartwright*, the magistrate, a superior court judge, deemed the complaint to be the information immediately following her determination that the defendant should be held to answer. On appeal, the defendant argued that his conviction should be reversed because no information had been filed. The appellate court distinguished *Smith*, pointing out that in *Smith* no accusatory pleading had ever been filed in the court in which the defendant was to be arraigned and the parties had attempted to cure that error after the fact. But in *Cartwright*, an information was filed in the court where the defendant was to be arraigned when the magistrate accepted as such the document then on file before her. (*People v. Cartwright, supra*, 39 Cal.App.4th at p. 1132.)

The instant case is just like *Cartwright*. Immediately following the preliminary hearing, the magistrate asked defendant's attorney if he would "stipulate

that the complaint may be deemed an information." Once counsel agreed, and the magistrate accepted the stipulation, the complaint, which was file stamped October 24, 2006, was restamped with the date of the preliminary hearing—November 27, 2006—and the word "Information" was printed above the file stamp. Thus, with the concurrence of the parties and the magistrate who had presided over the preliminary hearing, the complaint became the information. This agreement—to deem the complaint to be the information—did not attempt to confer jurisdiction. Rather, it just simplified filing of the information and insured that when defendant was arraigned, the superior court had an information upon which to proceed. There was no error.

## B. Adding an Alternative Basis for Conviction

At the close of all the evidence, the trial court allowed the prosecution to amend the information to extend the date range within which the crime was alleged to have occurred. The court then instructed the jury that it could find defendant guilty of vehicle theft or unauthorized use based upon either the October 9, 2006 incident in which defendant took the car and said that he had used it to visit his family or the incident in which the car disappeared overnight on October 16, 2006, and defendant was later seen driving it. Defendant claims that the instruction deprived him of his right to due process under the Sixth and Fourteenth Amendments of the United States Constitution and that the error is reversible per se. The Attorney General concedes that the instruction was improper but argues that it was harmless.

■ It is the rule that "a defendant may not be prosecuted for an offense not shown by the evidence at the preliminary hearing or arising out of the transaction upon which the commitment was based." (*People v. Burnett* (1999) 71 Cal.App.4th 151, 165–166 [83 Cal.Rptr.2d 629] (*Burnett*).) "The 'preeminent' due process principle is that one accused of a crime must be 'informed of the nature and cause of the accusation.' [Citation.] Due process of law requires that an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial." (*People v. Jones* (1990) 51 Cal.3d 294, 317 [270 Cal.Rptr. 611, 792 P.2d 643].)

At the preliminary hearing Zavala was not asked about nor did he mention that defendant had taken the car without permission on October 9, 2006. It is undisputed that, although defendant had some notice of the October 9, 2006 incident through the investigator's report, the first he learned about the alleged lack of consent was at trial. Accordingly, we accept the Attorney General's concession of error. The thornier question is whether the error may be deemed harmless.

■ In determining whether a constitutional error is reversible under the federal Constitution, the United States Supreme Court distinguishes between "trial errors," which are subject to harmless error analysis, and "structural errors," which require automatic reversal. (*Arizona v. Fulminante* (1991) 499 U.S. 279, 306–310 [113 L.Ed.2d 302, 111 S.Ct. 1246].) Trial errors are those that occur "during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether [the error] was harmless beyond a reasonable doubt." (*Id.* at pp. 307–308.) Structural errors are "structural defects in the constitution of the trial mechanism . . . affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." (*Id.* at pp. 309–310.) These structural errors "include: (i) 'total deprivation of the right to counsel at trial'; (ii) trial by a 'judge who was not impartial'; (iii) 'unlawful exclusion of members of the defendant's race from the grand jury'; (iv) denial of the right to self-representation at trial; and (v) denial of the right to a public trial." (*People v. Stewart* (2004) 33 Cal.4th 425, 462 [15 Cal.Rptr.3d 656, 93 P.3d 271], quoting *Arizona v. Fulminante, supra,* at pp. 309–310.) Structural errors are reversible per se because their effect cannot be " 'quantitatively assessed' [citation] by a comparison to other evidence admitted at trial." (*People v. Flood* (1998) 18 Cal.4th 470, 510 [76 Cal.Rptr.2d 180, 957 P.2d 869] (conc. opn. of Werdegar, J.).)

Defendant maintains that the instant error is structural in nature and, therefore, is not subject to harmless error analysis. In support of this proposition defendant relies upon *Burnett, supra,* 71 Cal.App.4th 151. In *Burnett,* the information alleged an incident, described at the preliminary hearing, in which the defendant had possessed a .38-caliber firearm. At trial, a different witness described a separate incident, not mentioned at the preliminary hearing, in which the defendant had possessed a .357-caliber firearm. The trial court permitted the prosecution to amend the information to allow the jury to find the defendant guilty of possessing a firearm based upon either of the two incidents. (*Id.* at pp. 167, 169.) A majority of the Court of Appeal held that the amended information impermissibly allowed the defendant "to be convicted based on a completely different incident than that shown by the evidence at the preliminary hearing" (*id.* at p. 171) and rejected the respondent's argument that the error was harmless: "It is as a matter of law irrelevant whether a defendant is prejudiced by being prosecuted for an offense not shown by the evidence at the preliminary hearing" (*id.* at p. 177).

In stating that prejudice is irrelevant, the *Burnett* majority relied upon *People v. Winters* (1990) 221 Cal.App.3d 997 [270 Cal.Rptr. 740] (*Winters*), which, in turn, cited *People v. Bomar* (1925) 73 Cal.App. 372 [238 P. 758] (*Bomar*). In both *Winters* and *Bomar,* the information was improperly amended to add new charges and the defendants were convicted of the improperly added charges. (*Bomar, supra,* at p. 378; *Winters, supra,* at

p. 999.) Such results are unquestionably prejudicial. What happened here (and in *Burnett*) was that the jury was permitted to find defendant guilty based upon alternative factual scenarios, only one of which was improper. Although defendant was prosecuted for a crime that had not been revealed at the preliminary hearing, he was not necessarily convicted on that basis, as were the defendants in *Bomar* and *Winters*. Thus, we question whether *Winters* or *Bomar* supports the conclusion implicit in *Burnett*'s statement, which is that amending an information to permit a jury to find guilt on alternative bases, one of which was not shown by the preliminary hearing, is necessarily reversible error.[3]

■ The Attorney General argues that prejudice should be determined under the analysis described by *People v. Guiton* (1993) 4 Cal.4th 1116 [17 Cal.Rptr.2d 365, 847 P.2d 45] (*Guiton*). Briefly, *Guiton* elaborated upon the holding of *People v. Green* (1980) 27 Cal.3d 1 [164 Cal.Rptr. 1, 609 P.2d 468], in which the Supreme Court held that "when the prosecution presents its case to the jury on alternate theories, some of which are legally correct and others legally incorrect, and the reviewing court cannot determine from the record on which theory the ensuing general verdict of guilt rested, the conviction cannot stand." (*Id.* at p. 69.) *Guiton* distinguished the legal errors described in *Green* from errors based upon insufficient evidence: "If the inadequacy of proof is purely factual, of a kind the jury is fully equipped to detect, reversal is not required whenever a valid ground for the verdict remains, absent an affirmative indication in the record that the verdict actually did rest on the inadequate ground. But if the inadequacy is legal, not merely factual, . . . the *Green* rule requiring reversal applies, absent a basis in the record to find that the verdict was actually based on a valid ground." (*Guiton, supra*, at p. 1129.)

■ The Attorney General maintains that the October 9, 2006 incident was a *factually* inadequate basis for a guilty verdict and, therefore, reversal is not required because the October 16 through 19, 2006 incident was factually adequate. According to the Attorney General, there is insufficient evidence of criminal intent to support a conviction of theft or unauthorized use based upon the October 9, 2006 incident. We reject this argument. Vehicle Code section 10851, subdivision (a), makes it a crime for any person to drive or take "a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or

---

[3] We note that *Burnett* did not reverse the conviction on the ground the error was reversible per se. After concluding that it was illegal to permit a conviction based upon an incident that was not shown by the evidence at the preliminary hearing, *Burnett* went on to hold that the defendant's counsel had waived the error by failing to object. (*Burnett, supra*, 71 Cal.App.4th at p. 179.) The waiver, the court concluded, amounted to ineffective assistance of counsel and the court reversed the judgment on that basis. (*Id.* at pp. 182–183.)

without intent to steal the vehicle." ■ The evidence showed that defendant took the car, without consent, and removed it from Zavala's possession until 9:00 or 10:00 p.m. on October 9, 2006. The Attorney General maintains that there was no evidence that Zavala told defendant he could not take the car from the parking lot. But certainly one could reasonably infer that, absent express permission, defendant would have known that any use of the car, other than what was necessary to repair it, was not authorized and that he took the car intending to deprive Zavala of possession for whatever time it took him to go visit his family.

In the alternative, the Attorney General maintains, in effect, that the instant error may be characterized as the type of error *Guiton* termed a legal inadequacy. That is, a theory of guilt based upon the October 9, 2006 incident was legally improper since that incident had not been shown at the preliminary hearing. In that case, the judgment must usually be reversed. (*Guiton, supra*, 4 Cal.4th at p. 1129.) However, "[s]ometimes it is possible to determine from other portions of the verdict that the jury necessarily found the defendant guilty on a proper theory." (*Id.* at p. 1130.) Thus, as the Attorney General maintains, reversal would not be warranted if the record shows that the verdict was actually based upon the October 16 through 19, 2006 incident. But there is no such showing in this case.

It is true that, in addition to finding defendant guilty, the jury found two sentencing allegations to be true: (1) that "the manner in which the crime was carried out indicated planning, sophistication or professionalism," and (2) that defendant "took advantage of a position of trust or confidence to commit the crime." The Attorney General maintains that these findings show that the jury must have convicted defendant based upon the October 16 through 19, 2006 incident. We agree that this incident shows both planning and a breach of trust. The jury could have found that defendant took advantage of Zavala's trust and had the car key duplicated so that he could take the car on October 16, 2006, without breaking in or tampering with the ignition. But, as the prosecutor argued to the jury, the October 9, 2006 incident could also support a finding of guilt for an unauthorized use. And there is evidence that could support the findings that the crime was planned and that it breached a trust. October 9, 2006, was a Monday. The jury might have inferred that defendant, who had worked for Zavala over the weekend and had been paid in advance to work again on Monday, had anticipated that Zavala would have to leave the car to go to work on Monday morning. It would also have been reasonable to infer that defendant expected Zavala would leave the key with him as it was presumably necessary to turn the car on to complete the work. Thus, the jury could have found that, expecting to be left alone with the car and the key, defendant planned to make unauthorized use of the vehicle, occasioned by Zavala's trust, to go visit his family. Accordingly, we are not

convinced beyond a reasonable doubt that the jury necessarily found defendant guilty based upon the October 16 through 19, 2006 incident. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824].)

It follows that we need not decide whether the error should be considered reversible per se or whether it could sometimes be harmless if other parts of the verdict show that the jury found defendant guilty on a proper theory. Under either analysis, the judgment must be reversed.

## V. Disposition

The judgment is reversed. Defendant's petition for habeas corpus is denied.

Elia, J., and Bamattre-Manoukian, J., concurred.

A petition for a rehearing was denied October 2, 2008, and the opinion was modified to read as printed above.