Filed 7/15/22 P. v. Courts CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| THE PEOPLE, | C094638 |
| Plaintiff and Respondent, | (Super. Ct. No. SCCRCRF20201577) |
| v. | |
| JEFFERSON ERNEST COURTS, | |
| Defendant and Appellant. | |

Defendant Jefferson Ernest Courts was charged with unlawful possession of a firearm and unlawful possession of ammunition. At trial, the prosecution developed an alternative factual theory of guilt on the ammunition offense that was not shown by evidence presented at the preliminary hearing, and that was supported by the testimony of a prosecution witness who did not testify at the preliminary hearing. After a jury found defendant guilty of both offenses, the trial court imposed an aggregate sentence of seven years and four months in state prison. On appeal, defendant claims trial counsel provided ineffective assistance of counsel by failing to object to the witness's testimony and presentation to the jury of the alternative factual theory.

Concluding that defendant has failed to demonstrate prejudice from any deficient performance by trial counsel, we affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

A January 2021 information, filed after a preliminary hearing, charged defendant with two offenses: possession of a firearm by a felon (Pen. Code,[1] § 29800, subd. (a)(1); count 1), and unlawful possession of ammunition (§ 30305, subd. (a)(1); count 2). Specifically, the information alleged that: (1) on December 26, 2020, having previously been convicted of a felony, defendant possessed a "Ruger .22 revolver" in Siskiyou County; and (2) on the same date and in the same county, defendant "own[ed], possess[ed], and ha[d] under [h]is control ammunition."

The following facts emerged at trial. Around 5:00 p.m. on December 26, 2020, a Siskiyou County reserve deputy sheriff was in civilian clothes and driving his car when he saw defendant walking on a road with a woman and a dog. The reserve deputy was driving in the area because he had heard gunshots and wanted to "check it out to see what it was." "It ended up being some neighbors target practicing," the reserve deputy testified at trial. Defendant waved down the reserve deputy, who stopped his car. Defendant asked for a ride into a nearby town.

After observing a "revolver pistol" "tucked in [defendant's] waistband in his pants," the reserve deputy declined defendant's request. But as the strangers walked toward the nearby town, the reserve deputy called the "sheriff's department dispatch," and "follow[ed] behind" them in his car, maintaining a distance of about 100 yards. About 10 minutes later, a patrol vehicle approached from the opposite direction. As the patrol vehicle got closer, the reserve deputy saw defendant "basically run to the left side of the road and pull[] the gun out of his waistband and throw it under a bush that was on the side of the road." Defendant used both of his hands.

---

**1**    Undesignated statutory references are to the Penal Code.

The sergeant driving the patrol vehicle also saw defendant "tossing something under a bush at the shoulder" of the road as he approached. The sergeant may have seen two tosses, but not more than two. The reserve deputy told the sergeant that he had seen defendant "throw [a] gun under" the same bush. When the sergeant went to the bush, he saw "two boxes of .22 ammunition, a few loose rounds on the ground and the revolver." The three items were within inches of each other.

On cross-examination, the sergeant: (a) testified that he was about 20 yards away from defendant when he saw defendant make the tossing motion(s), and agreed with defense counsel that it was possible defendant "threw something at the bush . . . like a stick for a dog" or a "vodka bottle"; (b) recalled seeing a vodka bottle during the incident, and after initially testifying that he did not remember where he saw it, explained he thought he saw the bottle in a backpack that belonged to the woman who was with defendant; (c) agreed with defense counsel that the gun he found under the bush on the side of the road was a "suitable weapon for target shooting."

The sergeant detained defendant, and patted him down, but "didn't go into his pockets." The sergeant found no contraband on defendant.

A later, "more thorough," search of defendant at the county jail by a correctional deputy uncovered five .22-caliber, long-rifle rounds in defendant's pants pocket. The correctional deputy noted that finding in a jail report.

The correctional deputy did not testify at defendant's preliminary hearing, at which no mention was made of the discovery of bullets in defendant's pockets at the county jail. Nor was the correctional deputy's jail report ever disclosed to the defense. Also, in a February 2021 trial brief, the prosecution did not name the correctional deputy as an expected witness at the trial, which occurred in April 2021.

A pretrial defense pleading did discuss the discovery of bullets in defendant's pockets at the county jail and also identified by name the correctional deputy who testified at trial.

After the close of evidence, the trial court instructed the jury: "[I]n count 2 . . . the defendant is charged with unlawful possession of ammunition. The People have presented evidence of more than one act to prove that the defendant committed this offense. [¶] You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed."

I

*Closing Argument*

The prosecutor told the jury: "[Defendant] possessed a firearm. How do we know this? We know this from a couple different reasons. We have direct evidence that [the reserve deputy] saw the firearm in his waistband. He described the curved handle, the curved handle of the revolver as distinct from a semiautomatic pistol." "A short time later we have [the] [s]ergeant . . . arrive and upon [his] arrival [the reserve deputy] who had been following [defendant] the entire time sees [defendant] shuffle to the side of the road opposite to which he was walking and sort of gently . . . push something underneath the bush." "[The] [s]ergeant . . . also saw that." And then, "low [*sic*] and behold," a gun is found where defendant was seen "plac[ing] the gun."

Regarding count 2, the prosecutor told the jury: "So how do we know that he knew he possessed the ammunition?" "He hid it. Saw law enforcement coming, he threw it down. It was in his pocket."

Later, the prosecutor explained to the jury: "There is a little twist though with count 2 because there were multiple we'll say bundles of ammunition possessed. So all of you need to agree which bundle, if any, [defendant] possessed. Was it the bundle in the box that was . . . underneath the bush collectively, all of that ammunition underneath the bush? Was it the ammunition in his pocket at the jail?"

"So I submit that there are two essential bundles or categories of ammunition that were recovered at the scene and then that recovered from [defendant's] person in the jail.

4

You all have to agree which if any of those actually happened. You can all agree that they both happened, that's fine too, and I submit to you that they both happened, but the unanimity aspect of this requires that you all agree that he did at least one of those things either in the jail or the ammunition under the bush."

Addressing the notion of "reasonable doubt," the prosecutor told the jury: "Could it be a coincidence that [defendant] happened to go underneath the bush and act like he was throwing something underneath that bush and a firearm was discovered underneath the bush along with appropriately sized ammunition? It's not impossible, so it is possible. Is it reasonable? No."

Defense counsel told the jury: "What I think happened . . . is a young man and a young woman went for a walk on a nice day after Christmas, shared a bottle of vodka. They got lost, they asked for help getting into town because it was getting dark. They got refused. They started walking again and much to their surprise they were proned out at gunpoint a few minutes after they were refused a ride. [¶] [The] [s]ergeant . . . found a bottle of vodka in the bush. Wasn't in his report but he remembers it today. You have to look carefully at what the witnesses actually said under oath."

A bit later, defense counsel told the jury: "When you have two reasonable scenarios, tie goes to the defendant. Tie goes to [defendant]. So if you find it reasonable that the evidence points to a guy and his girlfriend taking a walk, drinking some vodka, throwing the bottle and maybe there's some furtive movement, maybe there's -- you know, really bad luck to be a felon and proned out near a bush where there's a target pistol and some ammunition. [¶] I think it's much more plausible personally that they went for a walk and threw a bottle of vodka out of the way because -- you know, for whatever reason they didn't want to have the alcohol with them, but that wouldn't be a crime."

Later still, defense counsel argued: "I don't know about you but it seems to me that in the officer coming to a scene worried that an armed individual has to be

apprehended and may have some contraband on their person you're going to search them very carefully . . . . Pretty sure that pat down was pretty thorough, I don't care how many pockets he had. No bullets, nothing in the pockets. That doesn't make sense.

"I can't explain how there's bullets in the pockets when he gets to jail but it seems very unlikely that [defendant] went out and found more bullets, that he picked them up off the floor of the patrol car.

"So what happened? I don't know. But that's not my job to explain how that happens. Unfortunately I don't have the reports from the jail to investigate in any kind of detail whether they were pockets in the vest, pockets in the pants, you know, any of that. That's very disappointing to say the least."

"We know that what brought reserve deputy to the scene at the front of his road was the sound of target [s]hooting. There's other people in the area with guns shooting guns."

"And I submit he did not have a gun on him of any kind or ammunition of any kind. He had a bottle of vodka that he got rid of. Where did the gun in the bush come from? I don't know, one of the target shooters put it down and was going to come back for it later. Who knows. It's not my problem."

II

*Verdicts And Sentencing*

The jury found defendant guilty on both counts and after finding "true" prior strike allegations, the trial court imposed an aggregate sentence of seven years and four months in state prison, consisting of: six years for count 1 (the upper term of three years, doubled for the prior strikes), with a consecutive term of 16 months on count 2 (one-third the middle term of two years, doubled for prior strikes).

Defendant timely appealed.

DISCUSSION

Defendant's ineffective assistance of counsel claims concern trial counsel's failures to object to: (1) any and all trial testimony of the correctional deputy who was not on the prosecution's pretrial witness list and did not testify at the preliminary hearing; (2) admission of testimony by the correctional deputy regarding his jail report, which had never been disclosed to defendant; and (3) the alternative factual theory of liability for count 2 presented by the prosecution at trial that was not shown by evidence presented at the preliminary hearing -- ammunition found in defendant's pockets at the county jail. Accordingly, defendant contends, we must reverse his conviction for unlawful possession of ammunition. The People argue there was no ineffective assistance of counsel.

Assuming for the sake of argument that counsel's performance was deficient, the claims are unpersuasive because defendant has failed to demonstrate prejudice.

I

*Background Legal Principles*

A

*Criminal Defendant Discovery Rights*

As relevant here, section 1054.1 provides: "The prosecuting attorney shall disclose to the defendant or his or her attorney all of the following materials and information, if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies: [¶] (a) The names and addresses of persons the prosecutor intends to call as witnesses at trial. [¶] . . .[¶] (f) Relevant written or recorded statements of witnesses . . . whom the prosecutor intends to call at the trial, including any reports or statements of experts made in conjunction with the case, including the results of physical or mental examinations."

Accordingly, the prosecution must "disclose the names and addresses of persons whom they intend to call as witnesses at trial, if such information is known or is reasonably accessible." (*In re Littlefield* (1993) 5 Cal.4th 122, 135-136.)

7

Upon a showing that a discovery violation has occurred, section 1054.5, subdivision (b) authorizes the trial court to "make any order necessary to enforce the provisions of this chapter, including . . . delaying or prohibiting the testimony of a witness or the presentation of real evidence, continuance of the matter, or any other lawful order. Further, the court may advise the jury of any failure or refusal to disclose and of any untimely disclosure."

Excluding evidence for a violation of the discovery statutes is a severe remedy that a trial court should use "only if all other sanctions have been exhausted." (§ 1054.5, subd. (c).) Exclusion of evidence for a discovery violation "is not an appropriate remedy absent a showing of significant prejudice and willful conduct motivated by a desire to obtain a tactical advantage at trial." (*People v. Jordan* (2003) 108 Cal.App.4th 349, 358.)

" '[W]hen nondisclosure of the identity of a *crucial* witness will preclude effective investigation and cross-examination of that witness, the confrontation clause does not permit the prosecution to rely upon the testimony of that witness at trial while refusing to disclose his or her identity.' " (*People v. Valdez* (2012) 55 Cal.4th 82, 107.)

B

*Due Process Right To Notice Of The Nature Of A Criminal Charge*

" '[A] defendant may not be prosecuted for an offense not shown by the evidence at the preliminary hearing or arising out of the transaction upon which the commitment was based.' (*People v. Burnett* (1999) 71 Cal.App.4th 151, 165-166 . . . .)[2] 'The

___

[2]    But cf. *People v. Sorden* (2021) 65 Cal.App.5th 582, 605, 606, 608 [distinguishing *Burnett*, and rejecting the argument that defendant's due process rights were violated when "he was not put on notice of the charges against him" because the trial court "allowed the jury to consider evidence . . . that was not presented at the preliminary hearing" and explaining that "[t]he error in [defendant's] reasoning is that he is focusing on *the evidence* presented at the preliminary hearing and at trial (which was different), rather than on *the offense* alleged in the information, shown at the preliminary hearing,

"preeminent" due process principle is that one accused of a crime must be "informed of the nature and cause of the accusation." [Citation.] Due process of law requires that an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial.' (*People v. People v. Jones* (1990) 51 Cal.3d 294, 317 . . . .)" (*People v. Dominguez* (2008) 166 Cal.App.4th 858, 866.)

As defendant concedes, this right is forfeited on appeal if not asserted in the trial court. (*People v. Burnett*, *supra*, 71 Cal.App.4th at pp. 178-179.)

C

*Ineffective Assistance Of Counsel*

To establish a violation of a criminal defendant's constitutional right to effective assistance of counsel, a defendant must show "counsel's action was, objectively considered, both deficient under prevailing professional norms and prejudicial." (*People v. Seaton* (2001) 26 Cal.4th 598, 666, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693].) "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." (*Strickland*, at p. 700 [80 L.Ed.2d at p. 702].)

"[T]he burden is on the defendant to show (1) defense counsel failed to act in the manner to be expected of reasonably competent attorneys acting as diligent advocates and (2) it is reasonably probable that a more favorable determination would have resulted in the absence of counsel's failings." (*People v. Lewis* (1990) 50 Cal.3d 262, 288.) A reasonable probability is a probability sufficient to undermine confidence in the outcome. (*Strickland*, *supra*, 466 U.S. 668 at p. 694 [80 L.Ed.2d at p. 698].) "The likelihood of a different result must be substantial, not just conceivable." (*Harrington v. Richter* (2011)

---

and proven at trial (all of which was the same . . .)," thereby "confus[ing] *whether* there was a violation . . . with *how*" there was one].

9

562 U.S. 86, 112 [178 L.Ed.2d 624, 647].) Stated differently, a "defendant must prove prejudice that is a ' "demonstrable reality," not simply speculation.' " (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1241.)

## II

### *Defendant Cannot Demonstrate Prejudice*

Here, excluding all of the custodial deputy's testimony, the prosecution presented evidence that: (1) a reserve deputy who saw a .22-caliber revolver in defendant's waistband when the two had a brief roadside conversation, reported his sighting to the "sheriff's department dispatch" and followed behind defendant in his car while defendant walked along the road; (2) as a patrol car approached from the opposite direction, the reserve deputy saw defendant "basically run to the left side of the road and pull[] the gun out of his waistband and throw it under a bush that was on the side of the road"; (3) a sergeant driving the patrol car that approached defendant from the opposite direction saw defendant "tossing something under a bush at the shoulder"; (4) the sergeant found "two boxes of .22 ammunition, a few loose rounds on the ground and the revolver" "within inches of each other" under the bush where defendant was seen making hand movements moments earlier.

Based on this evidence, it is not reasonably probable the jury would have concluded defendant did not possess the ammunition found under the roadside bush. The jury found defendant possessed the gun he was seen by two witnesses furtively tossing under the roadside bush when a sheriff's deputy was approaching him. The .22-caliber gun was capable of holding the .22-caliber bullets found near the gun under the same roadside bush. It is unreasonable to believe the jury would have found it a coincidence that defendant discarded the gun, but not the bullets fitting the gun when both were found at the same time and in the same place, and close in time to when defendant was seen discarding items in that location.

Defendant's argument to the contrary relies on his observations of imperfections in the prosecution's case, including: (1) minor discrepancies in the testimonies of the reserve deputy and the sergeant characterizing *how* defendant moved the revolver and ammunition under the bush (whether he "threw" the items, "put" them there, or "tossed" them there); (2) the absence of fingerprint evidence, photographs, and bodycam footage; (3) that others were engaged in target practice with firearms in the area; (4) that the sergeant agreed it was possible that defendant threw a stick for his dog or a vodka bottle; and (5) that the sergeant recalled seeing a vodka bottle on the scene (in defendant's girlfriend's backpack). Those observations, taken together, simply do not amount to a "substantial" (rather than just "conceivable") likelihood of a different outcome. Accordingly, defendant's claims a more favorable outcome would have resulted had trial counsel objected to the custodial deputy's testimony are unpersuasive. (Cf. *People v. Smith* (2011) 198 Cal.App.4th 415, 429-430 [rejecting an ineffective assistance of counsel claim because it was not reasonably probable the jury would have concluded that defendant did not commit the relevant offense].)

Similarly, there is no substantial likelihood that, had defense counsel objected to the prosecution's introduction of an alternative factual theory of liability for the possession of ammunition charge that was not identified at the preliminary hearing, and had the trial court agreed this was a problem, the prosecution would not have simply elected to forgo that alternative theory in closing argument to the jury, given the strength of the trial evidence on the factual theory that *was* identified at the preliminary hearing. (Cf. *People v. Brown* (2017) 11 Cal.App.5th 332, 341 [when the constitutional right to a unanimous jury is implicated, and the evidence shows the commission of more than one act vis-à-vis a charged offense, the prosecution can -- in closing argument -- make an election by tying each specific count to specific criminal acts elicited from the victims'

11

testimony].)  Accordingly, defendant's claim of prejudice resulting from trial counsel's failure to object to the alternative factual theory is unpersuasive.[3]

Defendant's contention that his conviction on count 2 "would have been reversible per se" -- *had* trial counsel objected to the alternative factual theory  -- is unavailing. Defendant cites *Burnett* and *Dominguez* for support but those cases do not stand for a "reversible per se" proposition.  (See *People v. Dominguez, supra*, 166 Cal.App.4th at p. 868, fn. 3 [observing that *Burnett* "did not reverse the conviction on the ground the error was reversible per se"]; *id.* at p. 870 ["we need not decide whether the error should be considered reversible per se"].)

Even if a "reversible per se" proposition were applicable, it would apply only if the claim were *preserved*.  Here, because (as defendant concedes) trial counsel did not object, the claim is forfeited on appeal and *Strickland* applies.  (*People v. Burnett, supra*, 71 Cal.App.4th at p. 151; see also *People v. Mesa* (2006) 144 Cal.App.4th 1000, 1008-1009 ["the *Strickland* 'reasonable probability' standard applies to the evaluation of a Sixth Amendment claim of ineffective assistance of counsel, even when defense counsel's alleged error involves the failure to preserve the defendant's federal constitutional rights"].)  And, as we explained above, under *Strickland*, defendant has not shown ineffective assistance of counsel.

---

[3]    Because we conclude defendant has not demonstrated ineffective assistance of counsel, we reject defendant's claim of "cumulative error" and/or "cumulative prejudice." (Capitalization omitted.) (See *People v. Burgener* (2003) 29 Cal.4th 833, 884 ["Having found no ineffective assistance, we necessarily reject defendant's claim of cumulative error"]; *People v. Tully* (2012) 54 Cal.4th 952, 1021 ["We have rejected [defendant's] claim of errors or, if error, of individual prejudice, and therefore he could not have suffered cumulative prejudice"].)

## DISPOSITION

The judgment is affirmed.

/s/
Robie, Acting P. J.

We concur:

/s/
Duarte, J.

/s/
Krause, J.

13