Filed 10/4/23  P. v. Magana CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JESUS ANTHONY MAGANA,<br><br>    Defendant and Appellant. | 2d Crim. No. B324975<br>(Super. Ct. No. 2020011737)<br>(Ventura County) |

Jesus Anthony Magana appeals from the judgment entered after a jury convicted him on two counts of sodomy with a child 10 years of age or younger (Pen. Code,[1] § 288.7, subd. (a)), two counts of oral copulation with a child 10 years of age or younger (*id.*, subd. (b)), sexual penetration of a child 10 years of age or younger (*ibid.*), three counts of aggravated sexual assault of a child—oral copulation (§ 269, subd. (a)(4)), aggravated sexual assault of a child—rape (*id.*, subd. (a)(1)), and seven counts of

---

[1] Unless otherwise stated, all statutory references are to the Penal Code.

committing lewd acts on a child (§ 288, subd. (a)). The jury also found true allegations that appellant took advantage of a position of trust or confidence (Cal. Rules of Court, rule 4.421(a)(11)); that the victim of the offenses—his daughter K.—was particularly vulnerable (*id.*, rule 4.421(a)(3)); and that appellant engaged in substantial sexual conduct with the victim (§ 1203.066, subd. (a)(8)). The trial court sentenced him to an aggregate term of 175 years to life in state prison.

Appellant contends (1) the trial court allowed the third amended information to be filed in violation of section 1009; (2) his trial attorney provided ineffective assistance of counsel (IAC) by failing to object to the filing of the second amended complaint; (3) the court abused its discretion in admitting certain evidence; and (4) his sentence amounts to cruel and unusual punishment. He also contends, and the People concede, that the abstract of judgment should be corrected to reflect he was convicted in counts 2, 4, and 5 of violating section 288.7, subdivision (b). We shall order the abstract amended accordingly. Otherwise, we affirm.

## STATEMENT OF FACTS

Appellant was convicted of repeatedly sexually abusing his daughter K. over the course of five years. K., who was 17 years at the time of appellant's trial, testified that appellant began abusing her when she was 9 years old and did not stop until she was 14. During the first incident, K. awakened in appellant's room to find him removing her clothing. He then touched her bare breasts with his hands and touched her vagina with his finger.

The abuse usually happened at night and followed the "same routine" of appellant removing K. from her bedroom while

she was sleeping and bringing her to his bedroom. The abuse occasionally took place in K.'s bedroom or in the bathroom. Appellant would tell K. that what he was doing to her was "secret" and said "[d]on't tell your mom." K. feared that if she challenged appellant "either she was going to get hurt or . . . [her] sister or [her] mom possibly could get hurt."

The next incident K. recounted took place when she was 10 years old. Appellant had K. masturbate his penis with her hand, then made her orally copulate him. Appellant thereafter required K. to orally copulate him approximately five times a week. Over the span of the next four years, appellant also placed his penis between her butt cheeks once or twice a week. On two separate occasions when she was 10 years old, appellant sodomized her. After K. turned 11, appellant had anal intercourse with K. again approximately 7 times. Appellant also put his penis on the outside of K.'s vagina "trying to go in," which hurt her. On one occasion appellant's penis penetrated K.'s vagina "[a] little." Appellant also took photographs of K.'s vagina. When K. was 12 and 13 years old, appellant also sucked on and licked her breasts. The abuse ended in March 2018 when K. was 14 years old and told appellant she was a lesbian.

Appellant's sister S. testified that on April 18, 2020, K. sent her a text message stating that she needed to talk to her about "something really bad." When S. met with K. several hours later, K. seemed nervous and "possibly a little scared." K. told S. about the abuse and then told her mother, who called the police.

That same night, K. was interviewed by Ventura County Sheriff's Detective Irma Andrade. During the interview K. described the incidents of abuse, which began when she was in the fifth grade. K. told the detective she was afraid of appellant.

She recounted S. and her mother telling her that appellant broke her arm when she was only a year old. She also added that appellant was a "knife instructor" and that she had heard him say he would not be afraid of killing someone "if it came down to it."

On April 19, 2020, Detective Andrade and Detective Joseph Preciado interviewed appellant at his residence. Appellant initially denied K.'s claims of abuse, but subsequently admitted that some of the incidents took place. He admitted that when K. was 9 to 12 years old he would wake up with "an urge" that led him to go into K.'s bedroom, pull her pants down, and place his erect penis between her butt cheeks. Sometimes his penis "accidentally" penetrated K.'s anus or vagina; the vaginal penetration happened only once, while he anally penetrated her several times. When appellant was interviewed again the following day, he did not retract any of his prior admissions and also admitted "push[ing]" his penis into K.'s mouth. During a search of appellant's residence, the police seized a computer and cell phone that contained images of what appeared to be nude and partially nude prepubescent females in provocative poses.

Appellant testified in his own defense. On direct examination, he admitted that he began molesting K. when she was 12 years old but denied that his penis had ever penetrated her anus or vagina. On cross-examination, he acknowledged his prior confessions that he had "maybe" penetrated K.'s vagina and that the tip of his penis had entered her anus. He also admitted telling the detectives that the abuse began when K. was 9 years old and that he had penetrated her anus approximately five times.

# DISCUSSION
## *Third Amended Information*

For the first time on appeal, appellant contends the trial court erred by allowing the prosecution to file the third amended information because it added counts for oral copulation that were not shown by evidence presented at the preliminary hearing, as required under section 1009.[2]  Appellant did not object to the third amended information on this ground below, so his contention is forfeited.  (See, e.g., *People v. Sorden* (2021) 65 Cal.App.5th 582, 606.)

Moreover, appellant did not acknowledge in his opening brief that he failed to make such an objection.  He merely offered that the third amended information was filed "[o]ver defense objection," but declined to inform us that he merely objected on the ground that the prosecution was seeking to amend the information at such a "late stage of the proceedings."  Although appellant acknowledged the lack of a specific objection for the first time in his reply brief and claims an objection would have been futile, this claim is also forfeited.  (See *People v. Rangel* (2016) 62 Cal.4th 1192, 1218-1219 [claims raised for the first time in reply brief are forfeited].)

---

[2] Section 1009 provides in pertinent part:  "The court in which an action is pending may order or permit an amendment of an indictment, accusation or information, or the filing of an amended complaint, for any defect or insufficiency, at any stage of the proceedings . . . .  An indictment or accusation cannot be amended so as to change the offense charged, nor an information so as to charge an offense not shown by the evidence taken at the preliminary examination."

In any event, we reject appellant's claim that the third amended information added charges that were not supported by evidence presented at the preliminary hearing, as provided in section 1009. "'[A]t a minimum, a defendant must be prepared to defend against all offenses of the kind alleged in the information as are shown by evidence at the preliminary hearing to have occurred within the timeframe pleaded in the information.'" (*People v. Jones* (1990) 51 Cal.3d 294, 317 (*Jones*).) "So long as the evidence presented at the preliminary hearing supports the number of offenses charged against [a] defendant and covers the time frame(s) charged in the information, a defendant has all the notice the Constitution requires." (*People v. Jeff* (1988) 204 Cal.App.3d 309, 342.)

The record belies appellant's claim that "the preliminary hearing testimony did not show more than two acts of oral copulation." Although there was testimony regarding K.'s description of certain specific incidents of appellant's sexual abuse, Detective Andrade also testified that K. told her that during the period in question the abuse occurred "continually every day, maybe once or twice where it didn't happen during the week." Because K. "describe[d] the number of acts committed with sufficient certainty to support each of the counts alleged in the [third amended] information (e.g., 'twice a month' or 'every time we went camping')" (*Jones*, *supra*, 51 Cal.3d at p. 316, italics omitted), appellant's claim that the information was filed in violation of section 1009 lacks merit.

### IAC

Appellant next contends that his trial attorney provided IAC by failing to object to the filing of the second amended information on the ground it included "a charge based on a third

6

act of oral copulation" that was not supported by evidence presented at the preliminary hearing. Suffice to state that this contention fails on the merits for the same reason that his first claim does. (See *People v. Memro* (1995) 11 Cal.4th 786, 818 [a defendant claiming IAC must show both deficient performance and prejudice].)

### *Alleged Evidentiary Error*

Appellant next contends that the trial court prejudicially erred in admitting K.'s statement that her mother and aunt had told her appellant broke her arm when she was a year old. We are not persuaded.

Over appellant's Evidence Code section 352[3] objection, the challenged evidence was admitted for nonhearsay purposes as relevant to prove the duress element of the aggravated sexual abuse charges and to assist in assessing K's credibility and explain her subsequent conduct. In concluding the probative value of the evidence was not outweighed by its potential prejudicial effect, the court reasoned: "[T]he only relevance is what was weighing on the victim's mind and I will give a limiting instruction so that the jury understands that they are not to use that information for any purpose other than evaluating the state of mind of the victim." The court added that K.'s understanding that appellant had broken her arm was "germane to explaining

---

[3] Evidence Code section 352 states: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

7

any of her conduct in terms of her reactions to the initial assaults or maybe a failure to disclose timely, that type of thing."

The jury was instructed as follows: "During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other. [K.]'s statement to detectives that she had been told the defendant broke her arm when [she was] one year old was not admitted to establish that information is true, rather, only to assist you in evaluating whether [K.] believed it was true and whether she acted in conformity with that belief. It's up to you to decide what weight, if any, to give to the effect that information may have had on [K.]"

Appellant fails to demonstrate the court abused its broad discretion in admitting the challenged evidence, i.e., that the court ""exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice."" (*People v. Williams* (2013) 58 Cal.4th 197, 270-271.) Appellant did not dispute below that the evidence was relevant to explain why K. might have been afraid of him and why she thus waited so long to report his abuse. (See, e.g., *People v. Burgener* (2003) 29 Cal.4th 833, 869 [recognizing that "[a]n explanation of the basis for the witness's fear is . . . relevant to . . . credibility and is well within the discretion of the trial court"].) Moreover, the jury was given a limiting instruction that plainly and clearly advised them to consider the evidence for a limited, nonhearsay purpose. We presume the jury understood and followed that instruction (*People v. Avila* (2006) 38 Cal.4th 491, 575), and appellant fails to persuade us otherwise.

Appellant's claim also fails for lack of prejudice. "[T]he admission of evidence, even if erroneous under state law, results

8

in a due process violation only if it makes the trial *fundamentally unfair*. [Citations.] Absent fundamental unfairness, . . . [t]he reviewing court must ask whether it is reasonably probable the verdict would have been more favorable to the defendant absent the error." (*People v. Partida* (2005) 37 Cal.4th 428, 439, citing *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Appellant makes no showing that the evidence rendered his trial fundamentally unfair, i.e., that there were "*no* permissible inferences" the jury could draw from the evidence. (*People v. Fuiava* (2012) 53 Cal.4th 622, 697.) Moreover, the overwhelming evidence of appellant's guilt included his own admissions to some of the charged crimes. And as the prosecution persuasively noted below, the challenged evidence was "no more prejudicial" than the multiple sex offenses with which he was charged. Because it is not reasonably probable that the result would have been different had the challenged evidence been excluded, appellant's claim fails.

### Cruel And Unusual Punishment

For the first time on appeal, appellant also contends that his sentence of 175 years to life constitutes cruel and unusual punishment. This contention is forfeited. (*People v. Baker* (2018) 20 Cal.App.5th 711, 720 (*Baker*).) Appellant offers no persuasive authority for his assertions that his sentence is "unauthorized" and thus subject to our review notwithstanding the lack of an objection below, or that an objection would have been futile.

In any event, the claim lacks merit. "The Eighth Amendment[, which forbids cruel and unusual punishments,] contains a "'narrow proportionality principle" that "applies to noncapital sentences."'" (*People v. Edwards* (2019) 34 Cal.App.5th 183, 190, quoting *Ewing v. California* (2003) 538

U.S. 11, 20 [155 L.Ed.2d 108].)  The Eighth Amendment "'forbids only extreme sentences that are grossly disproportionate to the crime.'"  (*Graham v. Florida* (2010) 560 U.S. 48, 60 [176 L.Ed.2d 825].)

Punishment is cruel and unusual under the California Constitution if it is "so disproportionate to the crime[s] . . . that it shocks the conscience and offends fundamental notions of human dignity."  (*In re Lynch* (1972) 8 Cal.3d 410, 424.)  In determining whether a sentence amounts to cruel and unusual punishment, "[w]e first consider 'the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society.'  [Citation.]  Next, we compare the sentence to 'punishments prescribed in the same jurisdiction for different offenses which . . . must be deemed more serious.'  [Citation.]  Finally, we compare the sentence 'with the punishments prescribed for the same offense in other jurisdictions.'"  (*Baker*, *supra*, 20 Cal.App.5th at p. 723, quoting *Lynch*, at pp. 425-427, italics omitted.)

Appellant offers that (1) he was only 39 years when he was convicted; (2) his crimes were not committed with violence and did not involve serious bodily injury; (3) his prior convictions were remote and were for comparatively minor crimes; and (4) he presented a relatively low risk of reoffending if released.  He also complains that "his aggregate sentence of 175 years to life is grossly disproportionate to the punishments for *a single crime* such as murder, attempted murder, mayhem[,] and torture. [Citations.]"  (Italics added.)  Finally, he asserts that his sentence does not serve any legitimate penological objective because it is so long that no human could serve it.

10

Appellant fails to demonstrate that his sentence amounts to cruel and unusual punishment.  His argument downplays the serious nature of his crimes.  In sentencing him, the trial court found the only mitigating factor was that his criminal history was "not as significant as . . . we routinely see."  The court declined to find that appellant presented a low risk of reoffending.  Moreover, appellant's complaint that his aggregate sentence is disproportionate to punishments for *single* offenses is misplaced.  (See *People v. Christensen* (2014) 229 Cal.App.4th 781, 808 [In determining whether a sentenced amounts to cruel and unusual punishment, "'[t]he penalties for single offenses . . . cannot properly be compared to those for multiple offenses'"].)

We also reject appellant's assertion that his sentence must be deemed cruel and unusual punishment because he could not possibly serve the entire sentence during his lifetime.  "In practical effect, [appellant] is in no different position than a defendant who has received a sentence of life without [the] possibility of parole:  he will be in prison all his life.  However, imposition of a sentence of life without possibility of parole in an appropriate case does not constitute cruel and unusual punishment . . . .  [¶]  Moreover, . . . a sentence such as the one imposed in this case serves valid penological purposes:  it unmistakably reflects society's condemnation of [appellant's] conduct and it provides a strong psychological deterrent to those who would consider engaging in that sort of conduct in the future." (*People v. Byrd* (2001) 89 Cal.App.4th 1373, 1383.)[4]

---

[4] Appellant's briefs also discuss the concurring opinions in *People v. Johnson* (2023) 88 Cal.App.5th 487, in which the court found among other things that a sentence of 135 years to life plus

Courts have repeatedly found that lengthy sentences for multiple sex crimes did not amount to cruel and unusual punishment. (See, e.g., *People v. Retanan* (2007) 154 Cal.App.4th 1219, 1222, 1230-1231 [135 years for sex offense convictions involving multiple victims]; *People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1130, 1134-1136 [375 years to life plus 53 years for multiple sexual assaults involving three victims]; *People v. Bestelmeyer* (1985) 166 Cal.App.3d 520, 531 [129 years for sexual abuse of young stepdaughter]; see also *Ortiz-Bravo v. Smith* (N.D. Cal., April 5, 2023, 2023 U.S. Dist. Lexis 60153, *45 [California state court "reasonably concluded that petitioner's sentence of 320 years to life plus 69 years and eight months was not grossly disproportionate to his crimes" where "[t]he record

_____

30 years on 9 counts involving sexual abuse of a child did not amount to cruel and unusual punishment. The concurring opinions urge the Supreme Court to address whether such a lengthy sentence that cannot possibly be served in one's lifetime serves a legitimate penological purpose. (*Id.* at pp. 508-509 [concurring opn. of Streeter, J.], 509-510 [concurring opn. of Pollak, J.].) Before appellant filed his reply brief, however, the Supreme Court granted the People's petition for review of *Johnson* on a different issue, deferred the matter, and issued a decision disapproving of the opinion on the issue upon which review was granted. (See *People v. Catarino* (2023) 14 Cal.5th 748, 757 [disapproving *Johnson*'s holding that the trial court violated the defendant's Sixth Amendment rights by finding he committed lewd act on child on separate occasions and that was subject to mandatory consecutive sentencing].) *Johnson*'s petition for review challenging the decision that his sentence did not amount to cruel and unusual punishment was denied. Because the Supreme Court declined to address the cruel and unusual punishment issue in *Johnson*, we decline appellant's request that we urge the court to take up the issue here.

12

show[ed] that petitioner subjected his daughter to heinous sexual acts on a weekly basis from the time she was 7 until she was 14 years old"].)  Appellant fails to demonstrate that a different result must be reached here.

### *Abstract Of Judgment*

Appellant also contends, and the People concede, that the abstract of judgment must be corrected to reflect that he was convicted on counts 2, 4, and 5 of violating subdivision (b) of section 288.7 rather than subdivision (a).  We shall order the judgment so modified.

### DISPOSITION

The judgment is modified to reflect that on counts 2, 4, and 5, appellant was convicted of violating section 288.7, subdivision (b), rather than section 288.7, subdivision (a).  The superior court shall prepare an amended abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.

CODY, J.

We concur:

GILBERT, P. J.

BALTODANO, J.

13

Derek D. Malan, Judge
Superior Court County of Ventura

_____

Matthew Alger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Gary A. Lieberman, Deputy Attorney General, for Plaintiff and Respondent.