Filed 9/9/24  P. v. Covarrubias CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B331599 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA053867) |
| v. | |
| ANTHONY COVARRUBIAS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Joseph J. Burghardt, Judge.  Affirmed.

William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Anthony Covarrubias appeals from an order denying his motion for a *Franklin/Cook* hearing under Penal Code section 1203.01.[1]  Covarrubias is serving two sentences of life without the possibility of parole (LWOP), plus 50 years to life, for two special circumstance murders he committed when he was 20 years old.  He argues a provision of the youth offender parole statute, section 3051, subdivision (h), violates the guarantees of equal protection under the United States and California Constitutions by excluding from parole consideration individuals sentenced to life without parole for offenses they committed between the ages of 18 and 25.  Covarrubias also contends the section 3051, subdivision (h) exclusion causes his sentence to violate the California Constitution's prohibition against cruel or unusual punishment.  We reject Covarrubias's contentions and affirm the trial court order.

**FACTUAL AND PROCEDURAL BACKGROUND[2]**

In September 2003, Covarrubias shot and killed Michael Bosh, and shot and mortally wounded Timothy Bosh, in a gang-related confrontation.  In January 2008, a jury found Covarrubias

---

[1]    *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*); *In re Cook* (2019) 7 Cal.5th 439 (*Cook*).

All further undesignated statutory references are to the Penal Code.

[2]    The facts underlying Covarrubias's conviction are derived from the Court of Appeal opinion affirming his judgment of conviction, *People v. Covarrubias* (Feb. 5, 2010, B206164) [nonpub. opn.].  We previously granted Covarrubias's request for judicial notice of three pages of the opinion.

guilty of two counts of special circumstance first degree murder (§§ 187, subd. (a), 190.2, subd. (a)(3) [multiple murder special circumstance]), and found that Covarrubias personally and intentionally used a firearm causing great bodily injury and death (§ 12022.53, subds. (c) & (d)). The jury also found that each of the offenses was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(A)). In February 2008, Covarrubias was sentenced to two terms of life in prison without the possibility of parole, plus 50 years to life for the section 12022.53, subdivision (d) enhancements.

This court affirmed the judgment on direct appeal in February 2010.

In December 2022, Covarrubias, in propria persona, filed a motion for a *Franklin/Cook* hearing and for appointment of counsel. He argued that section 3051's exclusion of 18 to 25-year-old defendants sentenced to life without parole violated equal protection guarantees. In May 2023, the court denied Covarrubias's motion, concluding he was not eligible for a youth offender parole hearing under section 3051 because he was 20 years old when he committed the offenses for which he was serving life without parole.

Covarrubias timely appealed.

## DISCUSSION

### I. Section 3051

The California Legislature enacted section 3051 in light of United States Supreme Court decisions that recognized the lessened culpability and greater prospects for reform that distinguish juveniles from adult offenders. (See Stats. 2013, ch. 312, § 1; *Graham v. Florida* (2010) 560 U.S. 48 (*Graham*); *Miller v. Alabama* (2012) 567 U.S. 460 (*Miller*).) Section 3051

3

requires the Board of Parole Hearings to conduct a "youth offender parole hearing" at specified times during the incarceration of certain youthful offenders. (See § 3051, subds. (a)(1) & (b); *Franklin, supra*, 63 Cal.4th at p. 277.)

Section 3051 has been amended since it was enacted. "When it was first enacted in 2013, the statute applied only to individuals who committed their crimes before the age of 18; the purpose of the statute was to align California law with then-recent court decisions identifying Eighth Amendment limitations on life without parole sentences for juvenile offenders. In more recent years, however, the Legislature has expanded the statute to include certain young adult offenders as well. Under the current version of the statute, most persons incarcerated for a crime committed between ages 18 and 25 are entitled to a parole hearing during the 15th, 20th, or 25th year of their incarceration. (Pen. Code, § 3051, subd. (b).)" (*People v. Hardin* (2024) 15 Cal.5th 834, 838 (*Hardin*).)

Further, "[i]n expanding section 3051 beyond the constitutional minimum age of 18 set out in *Graham* and *Miller*, the Legislature considered scientific evidence that neurological development, particularly in areas of the brain relevant to judgment and decisionmaking, continues beyond adolescence and into the mid-20's. [Citation.] In 2017, motivated by these same considerations, the Legislature once again raised the age cut-off for section 3051 parole hearings, this time to age 25." (*Hardin, supra*, 15 Cal.5th at p. 846.)

However, as the *Hardin* court explained, "not all youthful offenders are eligible for parole hearings. The statute excludes . . . offenders who are serving sentences of life in prison without

the possibility of parole for a crime committed after the age of 18." (*Hardin, supra*, 15 Cal.5th at pp. 838–839.)

## II. Section 3051, Subdivision (h), Does Not Violate Covarrubias's Constitutional Right to Equal Protection

Covarrubias argues that section 3051 violates the equal protection guarantees of the United States and California Constitutions by (1) treating young adult offenders with LWOP sentences for special circumstances murder differently than young adult offenders serving non-LWOP sentences, and by (2) excluding young adult offenders sentenced to LWOP while including juvenile offenders sentenced to LWOP.

The California Supreme Court rejected Covarrubias's first argument in *Hardin, supra*, 15 Cal.5th at page 839, on the same day that Covarrubias filed his opening brief. In his reply brief, Covarrubias appears to concede that *Hardin* forecloses his first equal protection claim, however, he continues to assert the argument to preserve any potential federal remedies.[3] We agree that *Hardin* is controlling and forecloses the argument.

In *Hardin*, our Supreme Court resolved a division among the Courts of Appeal as to whether section 3051, subdivision (h), violates the Fourteenth Amendment's equal protection guarantee by irrationally discriminating against young adult offenders

---

[3]  Although *Hardin* considered an equal protection claim under the United States Constitution and Covarrubias's claim invokes the state and federal constitutions, our Supreme Court saw " ' "no reason to suppose" that federal equal protection analysis would yield a result different from what would emerge from analysis of the state Constitution.' [Citation.]" (*Hardin, supra*, 15 Cal.5th at p. 847, fn. 2.)  Covarrubias does not argue otherwise.

sentenced to LWOP for special circumstance murder. (*Hardin*, *supra*, 15 Cal.5th at p. 839.) In *Hardin*, as in this case, the appellant (Hardin) was serving an LWOP sentence for a special circumstance murder he committed between the ages of 18 and 25. (*Ibid*.) The trial court denied Hardin's motion for a *Franklin/Cook* hearing on the ground that he was ineligible for a youth offender parole hearing under section 3051. (*Id*. at p. 840.) Hardin argued the section 3051, subdivision (h) LWOP exclusion violates equal protection principles. (*Ibid*.)

Our high court concluded the section 3051, subdivision (h) LWOP exclusion of offenders whose crimes were committed after the age of 18 is not irrational or constitutionally invalid. (*Hardin*, *supra*, 15 Cal.5th at pp. 863–864.) The court reasoned the statute reflects the Legislature's permissible balancing of "multiple considerations, including both concerns about increasing opportunities for release for young adults able to show growth and maturity and concerns about calibrating the level of punishment appropriate for certain serious criminal offenses." (*Id*. at p. 857.) The court further rejected Hardin's argument that "the Legislature could not rationally conclude that a conviction for special circumstance murder is a reliable indication of the seriousness of an offense or the culpability of the offender, such that it could rationally decide to exclude the offender from receiving the youth offender parole consideration to which other young adults are statutorily entitled." (*Id*. at p. 859.)

The court referenced the many decisions holding that special circumstance murder is "sufficiently serious and morally culpable as to justify imposing the most severe sanctions available under the law, up to and including death," and determined it could not say "that the decision to deny a parole

hearing to an offender convicted of special circumstance murder is irrational, even if it is possible that in certain cases some might consider an individual offender convicted of multiple violent crimes more culpable, in a holistic sense, than an individual convicted of special circumstance murder." (*Hardin, supra*, 15 Cal.5th at pp. 859, 863.)  The court thus concluded Hardin did not demonstrate "that Penal Code section 3051's exclusion of young adult offenders sentenced to life without parole is constitutionally invalid under a rational basis standard, either on its face or as applied to Hardin and other individuals who are serving life without parole sentences for special circumstance murder." (*Id*. at p. 839.)

*Hardin* is binding authority we must follow.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)  Accordingly, we reject Covarrubias's equal protection argument based on section 3051's different treatment of young adult LWOP and non-LWOP offenders.

Covarrubias also argues that the section 3051, subdivision (h) LWOP exclusion violates state and federal equal protection guarantees because there is no rational basis to differentiate between young adults and juveniles who committed LWOP offenses.

As Covarrubias asserts, *Hardin* did not address this issue. (*Hardin, supra*, 15 Cal.5th at p. 841.)  However, numerous Courts of Appeal have addressed and rejected this argument and determined there is a rational basis to treat juvenile and youth LWOP offenders differently in the context of section 3051, subdivision (h).  (See, e.g., *People v. Bolanos* (2023) 87 Cal.App.5th 1069, 1079, review granted Apr. 12, 2023, S278803; *People v. Hardin* (2022) 84 Cal.App.5th 273, reversed on other

grounds by *Hardin*, s*upra*, 15 Cal.5th 834; *People v. Acosta* (2021) 60 Cal.App.5th 769, 780–781 (*Acosta*); *People v. Morales* (2021) 67 Cal.App.5th 326, 347–349; *In re Murray* (2021) 68 Cal.App.5th 456, 463; *People v. Sands* (2021) 70 Cal.App.5th 193, 204 (*Sands*).)

As the court in *Sands* explained after noting that the rational basis test "sets a very high bar," the "Legislature had a rational basis to distinguish between offenders with the same sentence (life without parole) based on their age. For juvenile offenders, such a sentence may violate the Eighth Amendment. [Citations.] But the same sentence does not violate the Eighth Amendment when imposed on an adult, even an adult under the age of 26. . . . [T]he Legislature could rationally decide to remedy unconstitutional sentences but go no further." (*Sands*, *supra*, 70 Cal.App.5th at p. 204.)

Further, as explained in *Acosta*, *supra*, 60 Cal.App.5th at pages 779 through 780, when discussing the amendment to section 3051 to include juvenile LWOP offenders, "Section 3051 now affords a youth offender parole hearing to juvenile LWOP offenders to comply with *Montgomery* [*v. Louisiana* (2016) 577 U.S. 190] without resorting to costly resentencing hearings. [Citation.] The Legislature declined to include young adult LWOP offenders in this amendment, presumably because *Montgomery* did not compel such treatment for young adults. The Legislature thus had a constitutionally sufficient basis for distinguishing juvenile LWOP offenders from young adult LWOP offenders."

We agree with these courts. We reject Covarrubias's equal protection argument based on the differing treatment of young adult and juvenile offenders under section 3051, subdivision (h).

## III. Section 3051, Subdivision (h), Does Not Subject Covarrubias to Cruel or Unusual Punishment

Covarrubias next contends the Legislature's denial of youth offender parole hearings to offenders who committed their crimes between the ages of 18 and 25 and are sentenced to LWOP renders his sentence cruel or unusual punishment under the California Constitution. As Covarrubias concedes, he did not raise this argument in the trial court. He therefore forfeited it. (*People v. Baker* (2018) 20 Cal.App.5th 711, 720 (*Baker*).) We nonetheless exercise our discretion to address the merits of his claim. (*People v. Avila* (2020) 57 Cal.App.5th 1134, 1145, fn. 12.)

Covarrubias acknowledges his LWOP sentences were constitutionally valid when they were imposed. However, he asserts that his sentences have since become cruel or unusual because of "the Legislature's . . . recognition of the reduced culpability of offenders who commit their offenses in question before they become 26 years old and the above . . . provisions for giving some such offenders youth offender parole hearings at some point." Covarrubias appears to be referring to the amendments to section 3051, described in *Hardin* above. He asserts that while his LWOP sentences might not meet the test for disproportionate punishment standing alone (*In re Lynch* (1972) 8 Cal.3d 410, 424 (*Lynch*)), the sentences have been rendered cruel or unusual by the Legislature's recognition that young adult offenders are less culpable than other adults.[4]

---

[4]    In *Lynch*, the California Supreme Court identified a three-pronged test for courts to use when reviewing disproportionality claims. (*Lynch, supra*, 8 Cal.3d at pp. 425–429.) "First, [it] examined the nature of the offense and the offender. [Citation.]

9

We disagree. California courts have uniformly rejected the argument that the imposition of LWOP sentences on young adults violates state and federal protections against cruel and/or unusual punishment for the same reasons such sentences are cruel and/or unusual when applied to juvenile offenders. Covarrubias acknowledges one such case, *People v. Argeta* (2012) 210 Cal.App.4th 1478 (*Argeta*). In *Argeta*, a defendant who was 18 years old when he committed his offenses argued that, given his youth, the United States and California Supreme Courts' findings that such sentences are cruel and unusual when applied to juvenile offenders applied equally to him.[5] The *Argeta* court rejected the argument, citing the United States Supreme Court's

---

Second, [it] compared the punishment with the penalty for more serious crimes in the same jurisdiction. [Citation.] Third, [it] compared the punishment to the penalty for the same offense in different jurisdictions." (*People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1136 (*Cartwright*).)

[5] Covarrubias argues that *Argeta* is inapposite because the length of Argeta's sentence was not indicated in the opinion. While we do not dispute this point, it is not dispositive. The Court of Appeal in *Argeta* also considered whether Argeta's codefendant's sentence of 100 years, who was convicted of aiding and abetting Argeta in one count of murder and five counts of attempted murder, violated the state and federal constitutions. It appears that the *Argeta* court was also considering a similarly lengthy sentence for Argeta when it concluded that his sentence was not cruel and/or unusual under the California Constitution and Eighth Amendment. (*Argeta, supra*, 210 Cal.App.4th at p. 1482; see *People v. Diaz* (2023) 97 Cal.App.5th 1172, 1186 [citing *Argeta* and describing it as holding that a "life sentence imposed on 18 year old for first degree murder not cruel and unusual under federal and state Constitutions"].)

reasoning that "while '[d]rawing the line at 18 years of age is subject . . . to the objections always raised against categorical rules . . .[, it] is the point where society draws the line for many purposes between childhood and adulthood.' (*Roper v. Simmons* (2005) 543 U.S. 551, 574 [ ]; [Citation.].)" (*Argeta*, at p. 1482.) The *Argeta* court further noted "a line must be drawn at some point.  We respect the line our society has drawn and which the United States Supreme Court has relied on for sentencing purposes, and conclude Argeta's sentence is not cruel and/or unusual under *Graham*, *Miller*, or *Caballero*."[6]  (*Argeta*, at p. 1482.)

Covarrubias asserts *Argeta* is distinguishable because it was decided before the Legislature enacted section 3051, thus redrawing the "line referred to in *Argeta* . . . at 26 years of age, with respect to mental maturity . . . ."  This argument is unavailing.  The Legislature's decision to extend parole consideration hearings to certain young adult offenders is not an indication that the underlying sentences those offenders face constitute cruel or unusual punishment in the absence of a parole hearing, or that they are otherwise constitutionally invalid.

Further, even after section 3051 was enacted and subsequently amended, numerous California courts have concluded LWOP sentences, or their functional equivalent, are not cruel and/or unusual punishment when imposed on young adult offenders.  (E.g., *Acosta*, *supra*, 60 Cal.App.5th at pp. 781–782 [rejecting Eighth Amendment challenge to LWOP sentence as applied to 21 year old with autism spectrum disorder]; *People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1031–1032

---

[6]     *Graham*, *supra*, 560 U.S. 48; *Miller*, *supra*, 567 U.S. 460; *People v. Caballero* (2012) 55 Cal.4th 262.

11

(*Montelongo*) [rejecting Eighth Amendment challenge to LWOP sentence as applied to 18 year old and trial court's failure to consider his youth]; *People v. Abundio* (2013) 221 Cal.App.4th 1211, 1220–1221 [rejecting cruel or unusual punishment challenge under California Constitution to LWOP sentence as applied to 18 year old]; see also *People v. Edwards* (2019) 34 Cal.App.5th 183, 190–192, reversed on other grounds by *People v. Williams* (Aug. 29, 2024, S262229) \_\_\_Cal.5th\_\_\_ [2024 WL 3978624, p. *3] [the functional equivalent of LWOP sentence is not cruel and/or unusual punishment for 19 year old under state and federal constitutions]; *People v. Perez* (2016) 3 Cal.App.5th 612, 617–618 (*Perez*) [the functional equivalent of LWOP sentence is not cruel and unusual punishment for 20 year old].)

Covarrubias attempts to distinguish several cases addressing the issue, including *Acosta*, *Montelongo*, *Perez*,[7] and *In re Williams* (2020) 57 Cal.App.5th 427 (*Williams*), the latter of which rejected an argument similar to the one Covarrubias makes here, on the ground that they concern a claim under the Eighth Amendment and his claim is under the California Constitution.

This distinction is without consequence in this context. "While the federal proscription concerns 'cruel *and* unusual' punishments, article I, section 17 of the California Constitution states in pertinent part that '[c]ruel *or* unusual punishment may not be inflicted.' No distinction need be attached this difference from an analytic perspective, however." (*People v. Mantanez*

---

[7] While the *Perez* court specifically referenced the Eighth Amendment several times in its analysis, it also cited both the state and federal constitutions. (*Perez, supra*, 3 Cal.App.5th at p. 616.)

12

(2002) 98 Cal.App.4th 354, 358, fn. 7.)  Although "[w]e construe this provision separately from its counterpart in the federal Constitution" (*Cartwright*, *supra*, 39 Cal.App.4th at pp. 1135–1136), "[t]here is considerable overlap in the state and federal approaches.  'Although articulated slightly differently, both standards prohibit punishment that is "grossly disproportionate" to the crime or the individual culpability of the defendant.' [Citation.]  'The touchstone in each is gross disproportionality.' [Citation.]"  (*Baker*, *supra*, 20 Cal.App.5th at p. 733; see also *People v. Marshall* (1990) 50 Cal.3d 907, 938.)

Covarrubias argues that the distinction in wording between "cruel or unusual" in the California Constitution and "cruel and unusual" in the Eighth Amendment is "purposeful and substantive rather than merely semantic," citing *People v. Anderson* (1972) 6 Cal.3d 628, 634–637, superseded on other grounds by the California Constitution, article I, section 27.  Yet, Covarrubias fails to explain why the difference between the Eighth Amendment's use of "and" and the California Constitution's use of "or" has any significance in this case and thereby renders the analysis in the cases cited above, based on "gross disproportionality," inapplicable.  (*Baker*, *supra*, 20 Cal.App.5th at p. 733.)

We thus agree with the court in *Williams*, *supra*, 57 Cal.App.5th at pages 437 through 439.  In addressing the appellant's argument that an LWOP sentence imposed on any 21-year-old defendant constitutes cruel and unusual punishment, the *Williams* court observed, "[O]ur Supreme Court has essentially rejected that very argument in the context of the death penalty.  In *People v. Flores* (2020) 9 Cal.5th 371, 429 [ ], the court acknowledged research that youths ages 18 to 21 share

13

many of the same cognitive and developmental deficiencies as adolescents under age 18.  Quoting from the court's earlier opinion in *People v. Powell* (2018) 6 Cal.5th 136, 192 [ ], the court nonetheless held that 18 is ' "the age at which the line for death eligibility ought to rest." '  If the Eighth Amendment does not prohibit a sentence of death for 21 year olds, then most assuredly, it does not prohibit the lesser LWOP sentence.  [Fn. omitted.]" (*Williams*, at p. 439; see also *People v. Tran* (2022) 13 Cal.5th 1169, 1234–1235 [imposing the death penalty on 20 year old does not constitute cruel and unusual punishment even considering scientific research and expansion of § 3051].)  As discussed, a punishment violates both the United States and California Constitutions if it is " ' "grossly disproportionate." ' "  (See *Baker*, *supra*, 20 Cal.App.5th at p. 733.)  Covarrubias suggests no reason why the reasoning of *Williams* would not also apply to his claim under the California Constitution given the "considerable overlap" of the federal and state prohibitions against cruel and/or unusual punishment.  (*Ibid*.)

Accordingly, we reject Covarrubias's argument that the section 3051, subdivision (h) LWOP exclusion renders his sentence cruel or usual punishment in violation of the California Constitution.  (See *Williams*, *supra*, 57 Cal.App.5th at p. 439; *Argeta*, *supra*, 210 Cal.App.4th at p. 1482.)

**DISPOSITION**

The order denying Covarrubias's motion for a *Franklin/Cook* proceeding is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EGERTON, Acting P. J.

BERSHON, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.