Filed 9/8/25  P. v. Mendoza CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E083491 |
| v. | (Super.Ct.No. RIF2205527) |
| VICTOR DOMINGO MENDOZA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Jerry C. Yang, Judge.

Affirmed in part, reversed in part with directions.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers and Matthew Mulford, Deputy Attorneys General, for Plaintiff and Respondent.

1

## INTRODUCTION

Defendant Victor Domingo Mendoza was convicted by a jury of attempted murder (Pen. Code, §§ 664, 187, subd. (a); count 1)[1] with premeditation and deliberation, respecting his girlfriend Alisha Miller and shooting at an occupied vehicle. (§ 246; count 2.) Respecting count 1, the jury found defendant intentionally discharged a firearm (§ 12022.53, subd. (c)), while with respect to count 2, it found he discharged a firearm causing great bodily injury. (§ 12022.53, subd. (d).) The convictions flowed from an incident in which defendant fired shots at Miller's vehicle at an intersection, while Miller's sister, and a friend, Aaron Scott, were passengers; Scott suffered two gunshot wounds. After the jury returned verdicts, the court found three prior convictions under the "Three Strikes" law (§§ 667, subd. (b)-(i), 1170.12, subd. (c)) to be true in a court trial. The court sentenced defendant to 45 years to life on the attempted murder count, plus 20 years for the firearm enhancement, consecutive to a term of 21 years for the shooting at a motor vehicle count. Defendant appealed.

On appeal, defendant argues that the sentence must be reversed because (1) it was error to impose a 45 year-to-life term for the attempted murder, (2) the court erred in imposing the upper term of seven years for count 2 where the People did not allege and the jury did not find any factors in aggravation, and (3) the court erred in refusing to strike the firearm enhancement as to count 2. We remand for resentencing.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

## BACKGROUND

Because this is a sentencing appeal, a detailed rendering of the facts is unnecessary.

Defendant was in a relationship with Miller, and Miller described defendant as her fiancé. They lived together at defendant's residence in Moreno Valley, California. Miller, who has a history of drug use, described her relationship with defendant as amazing at trial.[2] On September 21, 2022, Miller went to her mother's home with her sister and Scott to help the mother move to a new location. Defendant, described by Miller as her ex-boyfriend in her statement to law enforcement, showed up at Miller's mother's house to help with the move.

At trial, Miller testified she was angry with defendant because the previous night he had brought another woman over to his place. So Miller left with someone else and spent the night in Hemet. When defendant arrived the next morning at Miller's mother's house to assist with the move, he became angry because Miller had a hickey on her neck. Defendant and Miller made cross-accusations of infidelity while Miller's sister and Scott were in Miller's car. After the moving was done, defendant left Miller's mother's house, Miller also left accompanied by her sister and Scott in Miller's car. At an intersection, a

---

[2] At the time of the trial, Miller contradicted many of the statements she had given to law enforcement officers on or near the day of the shooting and she was impeached with a recording of prior statements from her interview with Riverside County Sheriff's Deputy Nikko Sandoval on September 22, 2022. For this reason, we refer to information provided in the prior statements for information that Miller later contradicted, insofar as it is presumed to be true. (*People v. Mataele* (2022) 13 Cal.5th 372, 413 [a statement by a witness that is inconsistent with his or her trial testimony is admissible to establish the truth of the matter asserted pursuant to Evid. Code, §§ 1235 & 770].)

3

dark blue car driven by a white man approached alongside Miller's vehicle, yelled something, and fired shots at Miller's vehicle, injuring Scott.

However, on September 22, 2022, Miller told Deputy Sandoval that defendant had fought with Miller in the parking lot after Miller's mother had left, and that defendant had struck her. Defendant then left in his car, while Miller left in her car with her sister and Scott. At the stoplight on Alessandro Boulevard in Riverside, Miller was in the turn lane, intending to make a U-turn, when defendant, who had followed Miller, pulled alongside Miller's car at the traffic light. Miller then "flipped a bitch,"[3] and, as she executed the U-turn, defendant shot at her car.

Scott (who goes by the name of Kevin), was seated in the backseat of Miller's car and was injured by a shot that grazed his head, as well as a gunshot wound to his arm. Miller took Scott to a local hospital.

On September 20, 2022, the day before the instant shooting incident, defendant had fired a gun in the direction of another woman, referred to by defendant as his wife. A video recording of the incident from a Ring camera was played for the jury as domestic violence propensity evidence pursuant to Evidence Code section 1109.

Defendant was charged by information with attempted murder (§§ 664, 187, subd. (a); count 1), with an enhancement allegation that the attempt was willful, premeditated and deliberate, and an enhancement alleging he personally and intentionally

_____

[3] According to the Urban Dictionary, to "flip a bitch" means to make a U-turn. (https://www.urbandictionary.com/define.php?term=flip%20a%20bitch, as of June 9, 2025.)

4

discharged a firearm. (§ 12022. 53, subd. (c).) Defendant was also charged with shooting at an occupied motor vehicle (§ 246), with an enhancement allegation that he personally and intentionally discharged a firearm causing great bodily injury.[4] (§ 12022.53, subd. (d).) Following the presentation of evidence, the jury deliberated and returned guilty verdicts on both charges as well as the attendant enhancement allegations. Regarding attempted murder count, the jury found premeditation and deliberation.

In a separate bench trial, the court found the Strikes allegations to be true as to three separate prior convictions, before hearing and denying defendant's motion to strike the Strikes allegation, pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

On January 19, 2024, the court conducted the sentencing hearing. At the hearing, defendant requested that the court exercise its discretion under section 1385 to strike the firearm enhancements, and the trial court granted defendant's request as to the section 12022.53, subdivision (d), enhancement on count 2. The court committed defendant to state prison for the middle term of seven years, tripled under the Three Strikes law, for a term of 21 years for count 2, which was designated the principal term. For count 1, the court imposed an indeterminate term of 45 years to life (which the court calculated as 15 years to life, tripled under the Three Strikes law), which it ordered to run consecutive to count 2, plus 20 years for the section 12022.53, subdivision (c), enhancement on count 1,

---

[4] The information also included a great bodily injury enhancement allegation pursuant to section 12022.7, subdivision (a), but the People elected not to proceed on that allegation during discussions about instructions. The court formally struck the allegation at the sentencing hearing.

for a total determinate sentence of 41 years, to be followed by the indeterminate term of 45 years to life.

On March 13, 2024, defendant appealed.

## DISCUSSION

1. ***Whether the Sentence of 45 Years to Life for Attempted Murder With Premeditation Was Authorized***

At the sentencing hearing, the trial court imposed a term of 15 years to life for count 1, which it tripled under the Three Strikes law for a term of 45 years to life. Defendant argues on appeal that this sentence was unauthorized because the sentence for the underlying crime of attempted premeditated murder is straight life, not 15 years to life.[5] The People agree that the sentence is unauthorized. We also agree and provide the following analysis for the trial court's benefit on remand.

For the crime of attempted willful, deliberate, and premeditated murder, the person guilty of that attempt shall be punished by imprisonment in the state prison for life with the possibility of parole. (§ 664, subd. (a).) There is no mandatory minimum sentence unless the attempted murder is committed upon a peace officer or firefighter, or custodial officer, in which case the person guilty of the attempt shall be punished by imprisonment in the state prison for 15 years to life. (§ 664, subd. (f).)

---

[5] Perhaps recognizing that defense counsel had suggested the unauthorized sentence for premeditated attempted murder in defendant's sentencing memorandum and argument at the hearing, defendant also argues that if there is invited error, that we find trial counsel provided ineffective assistance by failing to object to the unauthorized sentence. Because the sentence is unauthorized, we need not address the alternative argument.

6

Under the Three Strikes law, where a defendant has two or more prior serious or violent felony convictions, "the term for the current felony conviction shall be an indeterminate term of life imprisonment with a minimum term of the indeterminate sentence calculated as the greatest of:  [¶] (i) Three times the term otherwise provided as punishment for each current felony conviction subsequent to the two or more prior serious or violent felony convictions.  [¶] (ii) Imprisonment in the state prison for 25 years.  [¶] (iii) The term determined by the court pursuant to Section 1170 for the underlying conviction, including any enhancement."  (§ 667, subd. (e)(2)(A).)

Because attempted premeditated murder of a person who is *not* a peace officer, firefighter, or custodial officer has no statutory minimum term, the minimum term for an indeterminate sentence under the Three Strikes law is determined with aid of section 3046.  That section requires a prisoner to serve a specified term of incarceration before being released on parole, so the Supreme Court has held it is a provision requiring service of a "minimum term" within the sentence-doubling language of section 667, subdivision (e)(1).  (*People v. Jefferson* (1999) 21 Cal.4th 86, 96 (*Jefferson*).)  Section 3046 "requires that a defendant sentenced to life imprisonment with the possibility of parole serve 'at least seven calendar years or . . . a term as established pursuant to any other section of law that establishes a [greater] minimum period of confinement' before becoming eligible for parole, it sets forth a 'minimum term' within the meaning of section 667[, subdivision] (e)(1)."  (*Ibid.*)  "The parole ineligibility period set by section 3046 *is* a

minimum term within the sentence-doubling language of section 667[, subdivision] (e)(1)." (*Ibid.*)

The imposition of a term of 15 years to life, tripled, was unauthorized. Therefore, the sentence on count 1 must be reversed and remanded for resentencing, bearing in mind that the parole ineligibility period set by section 3046 is the minimum term within the sentence-doubling language of section 667, subdivision (e)(1). (*Jefferson*, *supra*, 21 Cal.4th at p. 96; see *People v. Acosta* (2002) 29 Cal.4th 105, 113–114 [applying *Jefferson's* analysis to sentences under the one-strike law, § 667.61, subd. (a), and the Three Strikes law, § 667, subd. (b)-(i)].)

2. ***Whether the Court Erred in Imposing the Aggravated Sentence for Shooting at an Occupied Motor Vehicle***

Defendant argues that the trial court erred in imposing the upper term of seven years for the offense of shooting at an occupied vehicle in calculating the sentence for count two. The People argue the sentence imposed for count 2 is unauthorized because, as a third-striker, defendant should have been sentenced to an indeterminate term of 25 years to life. The People are correct that the sentence on count 2 is unauthorized.

Section 667, subdivision (e)(2)(A) governs the calculation of a sentence for a defendant who has two or more prior violent felony convictions. Section 667, subdivision (e)(2)(A)(i) requires a sentence calculated as three times the term otherwise provided as punishment for each current felony conviction subsequent to the two or more prior serious or violent felony convictions. Here, the court tripled the maximum possible

8

term for the underlying crime of shooting at an occupied motor vehicle. The possible terms for a conviction of shooting at an occupied vehicle are three, five or seven years. (§ 246.) The trial court imposed a determinate sentence of 21 years for count 2, apparently applying section 667, subdivision (e)(2)(A)(i).

However, "[a]lternative (i) will apply where the 'term otherwise provided as punishment' *exceeds eight years*. This includes such offenses as murder (§ 190), the middle or upper term for continuous child molestation (§ 288.5), and the upper term for manslaughter (§ 193, subd. (a)), certain forms of kidnapping (§ 208, subds. (b) & (d)), and carjacking (§ 215, subd. (b))." (*People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1143 (*Cartwright*), italics added.)

The penalty for shooting at an occupied vehicle is less than eight years, so alternative (i) of section 667, subdivision (e)(2)(A) does not apply. The court's imposition of a 21-year determinate sentence based on a tripled base term of seven years is unauthorized.[6] The court is required to sentence defendant under section 667, subdivision (e)(2)(A)(ii), which requires imposition of an indeterminate sentence with a minimum term of 25 years, if the court decides to resentence defendant under the Three Strikes law on that count.

---

[6] Defendant's argument about error in imposing tripled upper term of seven years is therefore moot, because the option of tripling the term only applies when the "term otherwise provided as punishment" exceeds eight years. However, if, on remand, the trial court decides to dismiss or strike the Strikes allegations pertaining to count 2, then the length of the term would need to comply with section 1170, subdivision (b). (*Cartwright*, *supra*, 39 Cal.App.4th at p. 1143.)

The sentence as such must be reversed and remanded for resentencing. In this respect, we point out that the trial court has multiple options depending on what it considers an appropriate sentence for this defendant. One option is for the court to impose an indeterminate term of life imprisonment with a minimum term of 25 years for count 2, consecutive to count 1. (§ 667, subd. (e)(2)(ii).) The court may also decide to exercise its discretion to dismiss the strikes with respect to one of the counts, but not with respect to another, if it was the court's intention to impose a determinate sentence on that count. (*People v. Garcia* (1999) 20 Cal.4th 490, 503–504.)

Additionally, the trial court has discretion to impose concurrent rather than consecutive terms for counts 1 and 2. Section 667, subdivision (c)(6), provides for consecutive terms where "there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts." By its plain language, subdivision (c)(6) requires imposition of consecutive sentences for any felony convictions *not* committed on the same occasion and *not* arising from the same set of operative facts. (*People v. Marcus* (2020) 45 Cal.App.5th 201, 209.)

The trial court in this case imposed consecutive terms based on the multiple victims factor, which is a factor the court may consider (Cal. Rules of Ct., rule 4.425(a)(2); *People v. Shaw* (2004) 122 Cal.App.4th 453, 458–459), but the imposition of consecutive terms under the Three Strikes law is not mandated thereby.

The court retains discretion to impose concurrent terms for those felonies that were committed on the same occasion or arose from the same set of operative facts, even

10

if the felonies qualified as serious or violent. (*People v. Henderson* (2022) 14 Cal.5th 34, 41, [holding that Proposition 36, the Three Strikes Reform Act of 2012, did not change the law by stripping sentencing courts of that discretion, or abrogate the holding of *People v. Hendrix* (1997) 16 Cal.4th 508, 513–514; *People v. Gangl* (2019) 42 Cal.App.5th 58, 71.)

Therefore, the sentence is reversed and remanded for resentencing. We express no views on the manner in which the court should exercise its discretion.

3. ***Whether the Enhancement for Discharging a Firearm Causing Great Bodily Injury is Authorized Where the Defendant Was Convicted of Discharging a Firearm at an Occupied Motor Vehicle***

Defendant argues that the trial court improperly imposed an enhancement for discharging a firearm causing great bodily injury respecting count 2, the offense of discharging a firearm at an occupied vehicle. Defendant correctly points out that the crime of discharging a firearm at an occupied vehicle is not on the list of crimes to which the enhancement may be imposed. However, defendant is under the impression that notwithstanding the dismissal of the enhancement, the judgment reflects that the firearm enhancement was imposed respecting count 2. In this we conclude he is mistaken.

The record clearly reflects that at the sentencing hearing, defense counsel requested that the court exercise its discretion to strike both gun enhancements. The court agreed to dismiss the firearm discharge enhancement as to count 2, which would

have resulted in the imposition of an enhancement term of 25 years to life under section 12022.53, subdivision (d).

After the court agreed to strike the section 12022.53, subdivision (d) enhancement to count 2, there was some confusion about the wording of the sentence, and defense counsel clarified that the sentence to be imposed would be a determinate term of 20 years for the firearm enhancement as to count 1, with a sentence of 45 years to life for the substantive offense in count 1, while a term of 21 years imposed for count 2.

The sentencing minutes do reflect the court imposed a 21-year term for count 2, which was designated the principal term, with an indeterminate term of 45 years to life (the sentence for count 1) ordered to run consecutive to count 2, and a 20-year enhancement for the discharge of the firearm as to count 1. The abstract of judgment for the determinate portion of the sentence reflects the imposition of a 21-year term (incorrectly indicated as the middle term) for count 2, imposed pursuant to the Three Strikes law, and the 20-year enhancement as to count 1, pursuant to section 12022.53, subdivision (c). Defendant is therefore mistaken in asserting that the enhancement was imposed respecting count 2. The abstract of judgment for the indeterminate sentence for count 1 reflects imposition of the indeterminate sentence of 45 years to life.

Putting aside the sentencing errors discussed under previous headings, and the reiterations of the sentence with minor misstatements made during a confusing back-and-forth between the court and defense counsel, the record of the sentence pronounced is accurate.

## DISPOSITION

The convictions are affirmed, but the sentence is reversed.  The matter is remanded for resentencing.  Upon resentencing, the trial court shall send a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

MILLER
J.
RAPHAEL
J.